Wilford KAMARATH, Petitioner,

v.

C. C. BENNETT, Respondent.

No. B–6821.

Supreme Court of Texas.

April 12, 1978.

Rehearing Denied May 31, 1978.

Michael M. Daniel and Virginia Paxton, Dallas, for petitioner.

James H. Martin, Dallas, for respondent.

DENTON, Justice.

This case presents the question of whether in Texas an implied warranty of habitability arises as a consequence of a landlord-tenant relationship. Wilford Kamarath, a lessee of an apartment in Dallas, Texas, filed this suit against C. C. Bennett, for damages for the breach of implied warranty of habitability of the urban residential rental property. The trial court, without a jury, rendered judgment that tenant Kamarath take nothing. The court of civil appeals affirmed, holding the implied warranty does not exist. 549 S.W.2d 784. We granted the application for writ of error to review this determination and we reverse and remand.

The material facts, for the most part, are not in dispute. On March 1, 1975, Petitioner Kamarath entered into an oral, month to month, lease of a one-bedroom apartment from Respondent C. C. Bennett. The agreed rent was $110.00 per month with Bennett agreeing to pay all utilities. The apartment was one of four in a two story brick building owned by Bennett. Kamarath inspected the premises before accepting and occupying them with his family on March 1, 1975. However, his undisputed testimony was that some of the defects— ancient plumbing that burst, depriving them of hot water; faulty electrical wiring; and structural defects causing the bricks of the building to fall—were not visible to him at the time of his inspection. On June 24, 1975, building inspectors of the City of Dallas first surveyed the premises and supported Kamarath's testimony of the defects' nondiscoverability. The city inspected the premises some ten times between June 1975 and November 1975. The inspector stated that the same conditions existed at the time of the final inspection as existed at the time of the first inspection. The inspector testi-

fied the defects found included: "plumbing problems, electrical problems, structural failure, roof damage, cracks and damage to the exterior walls, rubbish and debris, hazardous stairs, exterior plumbing condition in violation, dilapidated structurally, walls not weatherproof—needed paint. These are all violations of our ordinance."

Shortly after the initial inspection on June 24, 1975, Bennett received the city's notice to either repair the premises in specific details or vacate the premises. Sometime after this notice, Bennett gave notice to Kamarath to vacate the premises. Kamarath stopped paying rent in July 1975, claiming uninhabitability as an excuse. However, he did not vacate the premises until late September 1975.

■ Based on its findings of fact, the trial court concluded that the Respondent Bennett did not breach the contract with Kamarath, the tenant, or violate any duty in law owed to the tenant concerning the state of repair of the premises.[1] The court of civil appeals affirmed and applied the common law rule, long followed in Texas, that in the absence of fraud or deceit, there is no implied warranty on the part of the lessor that premises leased for residential purposes are suitable for their intended use. *Yarbrough v. Booher,* 141 Tex. 420, 174 S.W.2d 47 (1943); *Morton v. Burton-Lingo Co.,* 136 Tex. 263, 150 S.W.2d 239 (1941); *Lynch v. Ortlieb,* 70 Tex. 727, 8 S.W. 515 (1888); *Weinstein v. Harrison,* 66 Tex. 546, 1 S.W. 626 (1886); *Cameron v. Calhoun-Smith Distributing Co.,* 442 S.W.2d 815 (Tex.Civ.App.—Austin 1969, no writ); *Jackson v. Amador,* 75 S.W.2d 892 (Tex.Civ.App. —Eastland 1934, writ dism'd); *Weiss v. Mitchell,* 58 S.W.2d 165 (Tex.Civ.App.—Dallas 1933, writ dism'd).

The law has regarded the relationship of landlord and tenant as one governed by the

1. The trial court excluded testimony about the difference between the rent charged Kamarath and the fair market rental value of the premises in its state of disrepair and violation of the housing code. Since the testimony was clearly relevant to the damages, if any, Kamarath suffered, the testimony was improperly excluded.

There is no point, however, on the proper *measure* of damages. Likewise, there is no point, counterpoint or crosspoint raising the applicability vel non of the Deceptive Trade Practices Act [Tex.Bus. & Com.Code Ann. § 17.41 *et seq.*] to the warranty of habitability, and we express no opinion on whether that Act applies.

precepts and doctrines of property law. The lease was looked upon as a conveyance of an estate in land for a term which was based upon the mutual promises between the parties. The view was that the tenant's promise to pay was exchanged only for the bare right of possession. The possession of the land was so central to the original common law concept of a leasehold that the rent was actually looked upon as originating or flowing from the land. 3 G. Thompson, Commentaries on the Modern Law of Real Property § 1029 at 87 (1959); Williston, Contracts § 890 at 587 (3rd ed. 1962). Today the agrarian concept of landlord-tenant law has lost its credence, and has become less and less representative of the relationship existing between the lessor and lessee. The tenant is more concerned with habitability than the possibility of the landlord's interference with his possession. The present day dweller, in seeking the combination of living space, suitable facilities and tenant services, has changed the basic function of the lease. 1 American Law of Property § 3.78 at 347 (1952). The importance of the lease of an apartment today is not to create a tenurial relationship between the parties, but rather to arrange the leasing of a habitable dwelling. *Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969).

Our Legislature, like those of many other states, recognized the need and desirability of insuring adequate housing by adopting legislation granting home-rule cities one of the powers to adopt ordinances to establish minimum standards of habitation, and to enforce such standards against property that is unfit for human habitation and which constitutes a hazard to the health, safety and welfare of the citizens. Tex. Rev.Civ.Stat.Ann. art. 1175, § 35 (Vernon Supp.1978). The City of Dallas, along with other cities, has adopted a housing code, although a copy of the ordinance is not in the record. Specific violations of the city ordinance are in evidence in addition to Bennett's admission of the existence of the ordinance, and admissions by him that his property was in violation of the housing code.

■ There are several factors to be considered in the appraisal of the legal principles to be applied to the present-day relationship of landlord and tenant as applied to residential leases: (1) Our Legislature has recognized that the public welfare may require that dwellings offered for rental be in a safe condition and fit for human habitation. Art. 1175, § 35, supra. (2) Common experience demonstrates that the landlord has a much better knowledge of the conditions of the premises he leases to the tenant. Housing code requirements and violations thereof are usually known, or made known, to the landlord. *Marini v. Ireland*, 56 N.J. 130, 265 A.2d 526 (1970). The landlord is in a better position to know of latent defects, such as some of those involved in this case, which might go unnoticed by the tenant who rarely has the sufficient knowledge or experience to discover defects in wiring, plumbing or structural failures. (3) It is appropriate that the landlord who will retain ownership of the premises and permanent improvements should bear the cost of repairs to make the premises safe and suitable for human habitation. *See* 1 American Law of Property § 3.78 at 347–48. In the present day housing market, the landlord is usually in a much better bargaining position than the tenant which could result in the rental of poor housing and violation of public policies.[2]

■ In our opinion the above considerations demonstrate that in a rental of a dwelling unit, whether for a specified time

2. There is no evidence in this case that Kamarath and Bennett expressly agreed that Kamarath rented the property "as is," whether habitable or not. There is no indication the landlord Bennett expressly disclaimed any warranty of habitability. There is no crosspoint urging Kamarath waived the warranty. Accordingly, our holding should not be construed to mean that a tenant may not, by express agreement, waive the warranty of habitability. *Cf.* Restatement (Second) of Property, Landlord and Tenant § 5.1 (1977) ("Except to the extent the parties to a lease validly agree otherwise . . . .").

or at will, there is an implied warranty of habitability by the landlord that the apartment is habitable and fit for living. This means that at the inception of the rental lease there are no latent defects in the facilities that are vital to the use of the premises for residential purposes and that these essential facilities will remain in a condition which makes the property livable. *Green v. Superior Court*, 10 Cal.3d 616, 111 Cal.Rptr. 704, 517 P.2d 1168 (1974); *Javins v. First National Realty Corp.*, 138 U.S.App. D.C. 369, 428 F.2d 1071, cert. denied, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969); *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 280 N.E.2d 208 (1972); *Mease v. Fox*, 200 N.W.2d 791 (Iowa 1972); *Steele v. Latimer*, 214 Kan. 329, 521 P.2d 304 (1974); *Boston Housing Authority v. Hemingway*, 363 Mass. 184, 293 N.E.2d 831 (1973); *Rome v. Walker*, 38 Mich.App. 458, 196 N.W.2d 850 (1972); *Fritz v. Warthen*, 298 Minn. 54, 213 N.W.2d 339 (1973); *King v. Moorehead*, 495 S.W.2d 65 (Mo.App.1973); *Kline v. Burns*, 111 N.H. 87, 276 A.2d 248 (1971); *Marini v. Ireland*, 56 N.J. 130, 265 A.2d 526 (1970); *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974); *Pines v. Perssion*, 14 Wis.2d 590, 111 N.W.2d 409 (1961).

As stated in *Marini v. Ireland*, supra, "the very object of the letting was to furnish the defendant with quarters suitable for living purposes. This is what the landlord at least impliedly (if not expressly) represented he had available and what the tenant was seeking." The implied warranty of habitability which we hold exists in such a case is imposed by law on the basis of public policy and it arises by operation of law because of the relationship of the parties and the nature of the transaction.

██ In order to constitute a breach of implied warranty of habitability the defect must be of a nature which will render the premises unsafe, or unsanitary, or otherwise unfit for living therein. *Kline v. Burns*, supra. The nature of the deficiency, its effect on habitability, the length of time for which it persisted, the age of the structure, the amount of the rent, the area in which the premises are located, whether the tenant waived the defects, and whether the defects resulted from malicious, abnormal, or unusual use by the tenant, are among the factors to be considered in deciding if there had been a breach of the warranty of habitability. *Mease v. Fox*, supra; *Marini v. Ireland*, supra. The existence of a breach is usually a question of fact to be determined by the circumstances of each case. *Reese v. Diamond Housing Corp.*, 259 A.2d 112 (D.C.Ct.App.1969).

The judgments of the courts below are reversed and the cause remanded for trial in accordance with this opinion.

GREENHILL, C. J., and McGEE, J., note their dissent.

On motion for rehearing BARROW, J., concurs in result.