168 N.J. Super. 549 (1979)
403 A.2d 942
FRANCIS R. HODGSON AND CAROL J. HODGSON, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
EDWARD CHIN AND JENNY SOO CHIN, HIS WIFE, DEFENDANTS-COUNTERCLAIMANTS AND THIRD-PARTY PLAINTIFFS-RESPONDENTS,
v.
WILLIAM HODGSON AND MARION L. HODGSON, HIS WIFE, THIRD-PARTY DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 1979.
Decided June 8, 1979.
*550 Before Judges CONFORD, PRESSLER and KING.
Mr. Jan M. Schlesinger argued the cause for appellants (Messrs. Hartman, Schlesinger, Schlosser and Faxon, attorneys).
Mr. James R. Coley, Jr. argued the cause for respondents (Messrs. Coley & McCarthy, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D. (retired and temporarily assigned).
In the recent case of McDonald v. Mianecki, 79 N.J. 275 (1979), our Supreme Court held that the builder-vendor of a new home is subject to an implied warranty that the house which he constructs will be of reasonable workmanship and habitability. Id. at 293. The court affirmed a holding of this court to the same effect. 159 N.J. Super. 1 (1978). The issue in this appeal is whether that implied warranty extends to commercial premises, here a building consisting of two small stores on the first floor and two apartments on the second floor. The trial judge, relying on the principles set forth in Totten v. Gruzen, 52 N.J. 202 (1968), and Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965), held that the vendor was subject to an implied warranty that the *551 building would be reasonably fit for the purpose for which it was constructed.[1]
Plaintiffs brought this action to foreclose on a second mortgage which defendants refused to pay because the building had serious structural defects. By way of counterclaim against plaintiffs and third-party complaint against Francis Hodgson's brother and his wife, who were also developers of the property, defendants contended that the developers breached express and implied warranties that the building was structurally sound. The case was heard by a judge without a jury and decided in favor of defendants on the counterclaim. Judgment was entered in their favor for $14,826. Payments on the second (purchase-money) mortgage given the plaintiffs were stayed until the money judgment was satisfied.
Around 1973 the Hodgsons subdivided a tract of land they owned in Brant Beach, Long Beach Island, into 18 lots and constructed 16 residences and two commercial buildings thereon. Each commercial building comprised two stores on the first floor and two apartmnets on the second floor.
In November 1973 the defendants-buyers approached Francis Hodgson offering to purchase one of the commercial buildings. They were looking for investment property in order to relocate their business, a Chinese take-out restaurant and gift store. Negotiations culminated in a contract of sale of the property for $86,500 on February 23, 1974. The contract provided for a total downpayment of $17,300, with the remaining $69,200 to be financed under a purchase money motgage held by sellers. The contract as initially proposed stated that the property would be sold "as is." However, buyers rejected those terms, and the final contract contained *552 a one-year guarantee of the roof, plumbing and heating systems. It also required sellers to install certain items. Mortgage payments were deferred until June 1, 1974.
At the time of closing several stipulated items had not been installed, and buyers could not test the electrical or plumbing systems because the utilities had not been turned on.
Although the sales agreement called for sellers to take a purchase money mortgage for the full purchase price, in fact Citizens State Bank held the first mortgage on the property, and sellers took a second mortgage in the amount of approximately $20,000. Buyers made payments to the bank on the first mortgage, but paid nothing on the second mortgage because they discovered a number of construction defects when they began to use the premises in the summer of 1974. They asked the sellers to remedy these defects but the sellers did not do so.
Defendants at trial adduced the testimony of an expert witness  a carpenter and mason who specializes in residential and light commercial construction. His inspection of and report concerning the structure revealed the following major construction defects:
1. Sagging of roof because of improper framing and use of inferior lumber.
2. Severe settlement of front portion of building due to insufficient footings.
3. Lack of attic ventilation.
4. Foundation insecure.
5. Stairway supports inadequate.
6. Siding of inferior material and improperly installed.
7. Front stair "horses" incorrectly installed; split and broken.
The total estimated cost of repairs, which was broken down as to items, was $14,826. The expert also found a number of less serious defects but did not report on those as they were not major defects.
*553 The trial judge held there was an implied warranty of fitness for intended purpose in the case of new construction such as this and fully credited the testimony of defendants' expert as to the defects and consequential damages because of the breach of warranty.
On this appeal the sellers seek to distinguish McDonald, supra, on the ground that its holding applied only to residential properties, and they say that the law should treat differently commercial properties purchased primarily for investment and business purposes. They argue that the primary reason for extending an implied warranty to residential property lies in the disparity of bargaining power between the sellers of a new home and the purchaser. Sellers claim that this disparity of bargaining power does not exist in sales of commercial property. They suggest that the prospective purchaser of commercial property can protect himself by taking advantage of readily available building inspection services. They also assert that warranties should not extend to commercial premises because buyers of such property are not concerned with the habitability of the premises, but only with its income-producing potential. Finally, they argue that even if warranties extend to commercial property, that change in the law should be applied prospectively.
In McDonald defendant builder constructed a home selected by plaintiffs on a lot owned by him. Water was to be supplied through a well system, but the water from that well was not potable. Defendant made a number of attempts to alleviate the problem, but was unsuccessful, whereupon plaintiffs sued for damages. As noted, the court held that buildersvendors impliedly warrant that a house which they construct will be of reasonable workmanship and habitability. 79 N.J. at 293. Both mass developers and small-scale builders were made subject to the warranty. Id. at 293-294. The court expressly left open several other questions, such as whether a warranty applied to casual or personal as distinguished from commercial sales, whether a small-scale builder is strictly liable in tort, whether such a warranty *554 exists in third-party actions, whether an implied warranty exists in the sale of used houses and finally, whether and to what extent the implied warranty may be modified by express contractual disclaimers. Id. at 294-295 and note on 295.
The Supreme Court did not address the question of sale of new commercial, industrial or investment properties. Very little authority exists on whether the builder-vendor of a commercial property impliedly warrants that the premises will be constructed in a reasonably workmanlike manner. Two jurisdictions have suggested that commercial or industrial property might be subject to an implied warranty to the same extent as new homes, but the question was expressly left open. Yepsen v. Burgess, 269 Or. 635, 525 P.2d 1019, 1022 (Sup. Ct. 1974); Tavares v. Horstman, 542 P.2d 1275, 1282 (Wyo. Sup. Ct. 1975).
Allen v. Anderson, 16 Wash. App. 446, 557 P.2d 24 (Ct. App. 1976), is factually analogous  but the issue raised herein was not discussed there. In that case defendants constructed a four-unit apartment building, with the original intention to occupy one unit and rent the other three. The property was never listed for sale. However, plaintiffs, who were originally looking for an apartment, liked the building and made an offer to purchase it, which defendants accepted. After the sale a number of construction defects became apparent, for which plaintiffs-buyers sought damages on the ground that sellers breached an implied warranty that the structure was fit and habitable. (Several years before, the Washington Supreme Court had held that new houses were subject to such a warranty. House v. Thornton, 76 Wash.2d 428, 457 P.2d 199 (1969).) The court, noting that under Washington law such a warranty exists only where the vendor was a commercial builder and the building was constructed for sale and not personal occupancy, remanded the matter for a new trial on those issues. 557 P.2d at 26.
We have concluded that there are sufficient similarities in the case before us and McDonald to warrant applying the rule of that case to this situation. The property is in part designed *555 as a residence, and habitability is pertinent to that extent. The seller is a typical builder-seller, albeit a relatively small one. The buyers are small business persons who were obviously buying in reasonable reliance on the building being reasonably fit for the intended use  a concept inclusive of the habitability of the apartments. Whether or not our courts ultimately extend the McDonald rule to substantial buyers of large commercial buildings not erected pursuant to written building contracts,[2] we regard the pervasive logic and philosophy of that decision as applicable to these facts.
Accordingly, we approve the trial court's declaration of plaintiffs' liability on the adequately supported findings as to the substantial defects in this building and as to the consequent damages.
Plaintiffs also argue that any extension in this case of the McDonald principle should be declared to be prospective only. We disagree. The holdings in McDonald and here are not overt overrulings of prior law but a logical extension of general principles of liability to new fact situations. In any event, a party responsible for initiating a new development in the law is ordinarily entitled to have it applied in his action. Darrow v. Hanover Tp., 58 N.J. 410, 413 (1971); Goldberg v. Traver, 52 N.J. 344, 347 (1968). Note, also, that the plaintiff in the McDonald case was allowed recovery and there is no suggestion therein that the rule of the case is to be applied only prospectively.
Judgment affirmed.
NOTES
[1] The trial judge rendered his opinion prior to the Supreme Court decision in McDonald, and approximately one month after the Appellate Division decision in that case. Neither the parties nor the judge were aware of the Appellate Division decision in McDonald at the time of trial.
[2] Different principles (breach of contract) would undoubtedly continue to apply where an owner procures the construction of a building pursuant to a building contract and there are construction defects.