Joseph F. DAVIDOW, M.D., Petitioner,

v.

INWOOD NORTH PROFESSIONAL GROUP—PHASE I, Respondent.

No. C–6618.

Supreme Court of Texas.

Feb. 24, 1988.

Rehearing Denied April 20, 1988.

Frank W. Mitchell and Brock Akers, Vinson & Elkins, Houston, for petitioner.

Richard C. Waites and Kimberlee Kovach, Richard C. Waites & Associates, Houston, for respondent.

SPEARS, Justice.

This case presents the question of whether there is an implied warranty by a commercial landlord that the leased premises are suitable for their intended commercial purpose. Respondent Inwood North Professional Group—Phase I sued petitioner Dr. Joseph Davidow for unpaid rent on medical office space leased by Dr. Davidow. The jury found that Inwood materially breached the lease agreement and that the defects rendered the office space unsuitable for use as a medical office. The trial court rendered judgment that Inwood take nothing and that Dr. Davidow recover damages for lost time and relocation expenses. The court of appeals reversed the trial court judgment and rendered judgment that Inwood recover unpaid rents for the remainder of the lease period and that Dr. Davidow take nothing. 731 S.W.2d 600. We affirm in part and reverse and render in part.

Dr. Davidow entered into a five-year lease agreement with Inwood for medical office space. The lease required Dr. Davidow to pay Inwood $793.26 per month as rent. The lease also required Inwood to provide air conditioning, electricity, hot water, janitor and maintenance services, light fixtures, and security services. Shortly after moving into the office space, Dr. Davidow began experiencing problems with the building. The air conditioning did not work properly, often causing temperatures inside the office to rise above eighty-five degrees. The roof leaked whenever it rained, resulting in stained tiles and rotting, mildewed

carpet. Patients were directed away from certain areas during rain so that they would not be dripped upon in the waiting room. Pests and rodents often infested the office. The hallways remained dark because hallway lights were unreplaced for months. Cleaning and maintenance were not provided. The parking lot was constantly filled with trash. Hot water was not provided, and on one occasion Dr. Davidow went without electricity for several days because Inwood failed to pay the electric bill. Several burglaries and various acts of vandalism occurred. Dr. Davidow finally moved out of the premises and discontinued rent payments approximately fourteen months before the lease expired.

Inwood sued Dr. Davidow for the unpaid rent and costs of restoration. Dr. Davidow answered by general denial and the affirmative defenses of material breach of the lease agreement, a void lease, and breach of an implied warranty that the premises were suitable for use as a medical office. The jury found that Inwood materially breached the lease, that Inwood warranted to Dr. Davidow that the lease space was suitable for a medical office, and that the lease space was not suitable for a medical office. One month after the jury returned its verdict, but before entry of judgment, the trial court allowed Dr. Davidow to amend his pleadings to include the defense of constructive eviction. The trial court then rendered judgment that Inwood take nothing and that Dr. Davidow recover $9,300 in damages.

With one justice dissenting, the court of appeals reversed the trial court judgment and rendered judgment in favor of Inwood for unpaid rent. The court of appeals held that because Inwood's covenant to maintain and repair the premises was independent of Dr. Davidow's covenant to pay rent, Inwood's breach of its covenant did not justify Dr. Davidow's refusal to pay rent. The court of appeals also held that the implied warranty of habitability does not extend to commercial leaseholds and that Dr. Davidow's pleadings did not support an award of affirmative relief.

Inwood contends that the defense of material breach of the covenant to repair is insufficient as a matter of law to defeat a landlord's claim for unpaid rent. In Texas, the courts have held that the landlord's covenant to repair the premises and the tenant's covenant to pay rent are independent covenants. *Cottrell v. Carrillon Associates, Ltd.*, 646 S.W.2d 491, 494 (Tex. App.—Houston [1st Dist.] 1982, no writ); *Ravkind v. Jones Apothecary, Inc.*, 439 S.W.2d 470, 471 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.); *Edwards v. Ward Associates, Inc.*, 367 S.W.2d 390, 393 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.). Thus, a tenant is still under a duty to pay rent even though his landlord has breached his covenant to make repairs. *Ammons v. Beaudry*, 337 S.W.2d 323, 324 (Tex. Civ.App.—Fort Worth 1960, writ ref'd).

This theory of independent covenants in leases was established in early property law prior to the development of the concept of mutually dependent covenants in contract law. At common law, the lease was traditionally regarded as a conveyance of an interest in land, subject to the doctrine of *caveat emptor*. The landlord was required only to deliver the right of possession to the tenant; the tenant, in return, was required to pay rent to the landlord. Once the landlord delivered the right of possession, his part of the agreement was completed. The tenant's duty to pay rent continued as long as he retained possession, even if the buildings on the leasehold were destroyed or became uninhabitable. The landlord's breach of a lease covenant did not relieve the tenant of his duty to pay rent for the remainder of the term because the tenant still retained everything he was entitled to under the lease—the right of possession. All lease covenants were therefore considered independent. *See* 3 G. Thompson, *Thompson on Real Estate* §§ 1110, 1115 (1980); *cf. Kamarath v. Bennett*, 568 S.W.2d 658, 659–60 (Tex.1978).

■ In the past, this court has attempted to provide a more equitable and contemporary solution to landlord-tenant problems by easing the burden placed on tenants as

a result of the independence of lease covenants and the doctrine of *caveat emptor. See, e.g., Kamarath v. Bennett*, 568 S.W. 2d 658 (Tex.1978); *Humber v. Morton*, 426 S.W.2d 554 (Tex.1968). In *Kamarath v. Bennett*, we reexamined the realities of the landlord-tenant relationship in a modern context and concluded that the agrarian common-law concept is no longer indicative of the contemporary relationship between the tenant and landlord. The land is of minimal importance to the modern tenant; rather, the primary subject of most leases is the structure located on the land and the services which are to be provided to the tenant. The modern residential tenant seeks to lease a dwelling suitable for living purposes. The landlord usually has knowledge of any defects in the premises that may render it uninhabitable. In addition, the landlord, as permanent owner of the premises, should rightfully bear the cost of any necessary repairs. In most instances the landlord is in a much better bargaining position than the tenant. Accordingly, we held in *Kamarath* that the landlord impliedly warrants that the premises are habitable and fit for living. We further implicitly recognized that the residential tenant's obligation to pay rent is dependent upon the landlord's performance under his warranty of habitability. *Kamarath*, 568 S.W.2d at 660–61.

When a commercial tenant such as Dr. Davidow leases office space, many of the same considerations are involved. A significant number of commentators have recognized the similarities between residential and commercial tenants and concluded that residential warranties should be expanded to cover commercial property. *See, e.g.,* Chused, *Contemporary Dilemmas of the Javins Defense: A Note on the Need for Procedural Reform in Landlord–Tenant Law*, 67 Geo.L.J. 1385, 1389 (1979); Greenfield & Margolies, *An Implied Warranty of Fitness in Nonresidential Leases*, 45 Albany L.Rev. 855 (1981); Levinson & Silver, *Do Commercial Property Tenants Possess Warranties of Habitability?*, 14 Real Estate L.J. 59 (1985); Note, *Landlord–Tenant—Should a Warranty of Fitness be Implied in Commercial Leases?*,

13 Rutgers L.J. 91 (1981); *see also* Restatement (Second) of Property § 5.1 reporter's note at 176 (1977).

It cannot be assumed that a commercial tenant is more knowledgeable about the quality of the structure than a residential tenant. A businessman cannot be expected to possess the expertise necessary to adequately inspect and repair the premises, and many commercial tenants lack the financial resources to hire inspectors and repairmen to assure the suitability of the premises. Note, *supra*, at 111. Additionally, because commercial tenants often enter into short-term leases, the tenants have limited economic incentive to make any extensive repairs to their premises. Levinson & Silver, *supra*, at 68. Consequently, commercial tenants generally rely on their landlords' greater abilities to inspect and repair the premises. *Id.*

In light of the many similarities between residential and commercial tenants and the modern trend towards increased consumer protection, a number of courts have indicated a willingness to apply residential property warranties to commercial tenancy situations. *See Four Seas Investment Corp. v. International Hotel Tenants' Association*, 81 Cal.App.3d 604, 146 Cal.Rptr. 531, 535 (1978); *Golden v. Conway*, 55 Cal.App.3d 948, 128 Cal.Rptr. 69, 78 (1976); *Vermes v. American District Telegraph Co.*, 312 Minn. 33, 251 N.W.2d 101, 105 (1977); *Hodgson v. Chin*, 168 N.J.Super. 549, 403 A.2d 942, 945 (App.Div.1979); *Demirci v. Burns*, 124 N.J.Super. 274, 306 A.2d 468, 469 (App.Div.1973); *Westrich v. McBride*, 204 N.J.Super. 550, 499 A.2d 546, 548–49 (Law Div.1984); *40 Associates, Inc. v. Katz*, 112 Misc.2d 215, 446 N.Y.S.2d 844, 845 (Civ.Ct.1981); *Teodori v. Werner*, 490 Pa. 58, 415 A.2d 31, 34 (1980); *Olson v. Scholes*, 17 Wash.App. 383, 563 P.2d 1275, 1281 (1977); *see also Klatman v. Barnett*, 458 So.2d 806, 807 (Fla.Dist.Ct.App.1984) (Glickstein, J., concurring); *McArdle v. Courson*, 82 Ill.App.3d 123, 37 Ill.Dec. 402, 407, 402 N.E.2d 292, 297 (1980) (Craven, J., dissenting).

 There is no valid reason to imply a warranty of habitability in residential leas-

es and not in commercial leases. Although minor distinctions can be drawn between residential and commercial tenants, those differences do not justify limiting the warranty to residential leaseholds. Therefore, we hold there is an implied warranty of suitability by the landlord in a commercial lease that the premises are suitable for their intended commercial purpose. This warranty means that at the inception of the lease there are no latent defects in the facilities that are vital to the use of the premises for their intended commercial purpose and that these essential facilities will remain in a suitable condition. If, however, the parties to a lease expressly agree that the tenant will repair certain defects, then the provisions of the lease will control.

■ We recognized in *Kamarath* that the primary objective underlying a residential leasing arrangement is "to furnish [the tenant] with quarters suitable for living purposes." *Kamarath*, 568 S.W.2d at 661. The same objective is present in a commercial setting. A commercial tenant desires to lease premises suitable for their intended commercial use. A commercial landlord impliedly represents that the premises are in fact suitable for that use and will remain in a suitable condition. The tenant's obligation to pay rent and the landlord's implied warranty of suitability are therefore mutually dependent.

■ The existence of a breach of the implied warranty of suitability in commercial leases is usually a fact question to be determined from the particular circumstances of each case. Among the factors to be considered when determining whether there has been a breach of this warranty are: the nature of the defect; its effect on the tenant's use of the premises; the length of time the defect persisted; the age of the structure; the amount of the rent; the area in which the premises are located; whether the tenant waived the defects; and whether the defect resulted from any unusual or abnormal use by the tenant. *Kamarath*, 568 S.W.2d at 661.

■ The jury found that Inwood leased the space to Dr. Davidow for use as a medical office and that Inwood knew of the intended use. The evidence and jury findings further indicate that Dr. Davidow was unable to use the space for the intended purpose because acts and omissions by Inwood rendered the space unsuitable for use as a medical office. The jury findings establish that Inwood breached the implied warranty of suitability. Dr. Davidow was therefore justified in abandoning the premises and discontinuing his rent payments.

■ Dr. Davidow further contends that the court of appeals erred in reversing the trial court's award of damages for Inwood's breach of the lease agreement. Specifically, Dr. Davidow claims that his pleadings gave sufficient notice of an affirmative cause of action for Inwood's breach of the lease. In his First Amended Original Answer, Dr. Davidow pleaded the following:

Pleading further, [Dr. Davidow] would assert all common law, statutory and contract defenses available to him, and would further state that [Inwood's] suit has been brought in bad faith and/or for purposes of harrassment and is therefore subject to such penalties and obligations as the law dictates.

WHEREFORE, PREMISES CONSIDERED, [Dr. Davidow] respectfully prays ... for general relief, and for such other and further relief either at law or in equity, to which [he] might otherwise be justly entitled.

Dr. Davidow's trial amendment contains similar language. We agree with the court of appeals that the pleading is insufficient to support the award by the trial court of affirmative relief for Dr. Davidow. Because Dr. Davidow failed to plead a basis for affirmative relief, we hold that the trial court erred in awarding him damages based on Inwood's alleged material breach of the lease agreement.

For the reasons stated, the part of the court of appeals judgment awarding Inwood damages for unpaid rent and attorney's fees is reversed and judgment is here rendered that Inwood take nothing. The part of the court of appeals judgment that

Dr. Davidow recover nothing on his material breach claim is affirmed.