Opinion issued August 21, 2008 

 





 

In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-00821-CV

____________


RANDALL'S FOOD AND DRUGS, L.P., Appellant


V.


BILL PATTON d/b/a LINUX PROFESSIONAL GROUP, Appellee






On Appeal from the County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 807,726






MEMORANDUM OPINION


 This landlord-tenant case arises from sublease of a shopping-center unit by
appellant, Randall's Food & Drugs, L.P. (Randall's), as landlord, to Bill Patton and
Brian Weldon d/b/a Linux Professional Group as tenant. (1) The case was tried to the
court, which ruled in favor of appellee Patton, rendered a take-nothing judgment on
Randall's' claims, and filed findings of fact and conclusions of law. In four issues,
Randall's contends that (1) it conclusively established its right to prevail on its claim
for breach of contract and was therefore entitled to attorney's fees as a matter of law, 
(2) an erroneous fact finding by the trial court resulted in reversible error, and (3) the
trial court erred by rendering judgment in favor of a severed party. We reform the
judgment and, as modified, we affirm. Facts and Procedural Background

 The parties signed the sublease agreement on July 1, 2002. The terms
contemplated rental of the premises for a three-year lease term for use as a non-profit
software-training center, with a monthly rental payment of $2,107.00, plus monthly
charges for taxes, insurance and common area maintenance ("CAM"), and a ten-percent penalty for amounts not paid within five days of the due date. The agreement
specified that Patton, as subtenant, subleased the premises from Randall's "upon the
same terms, conditions, requirements and provisions as are set forth in the Master
Lease," by which Randall's originally leased the premises on November 22, 1982, and
further stated that the sublease agreement "incorporated . . . by reference" the entire
master lease. The sublease listed eight "events of default," which included failing or
refusing to pay rent, vacating or abandoning the premises, and "[a]ny event of default
described in the Master Lease." In addition, the sublease referred to the master lease
in paragraphs that addressed the lease term, minimum rent, late charges, and insurance. 
Patton's rights as subtenant were further "subject to all the terms and conditions of the
Master Lease," pursuant to paragraph 4 of the sublease agreement. Though Patton
requested a copy of the master lease in an attempt to clarify escalating CAM
obligations, it is undisputed that he did not ever receive the requested copy. 

 After a dispute arose over the escalating CAM obligations and Patton's
complaints that he had to do his own maintenance despite the CAM fees, Patton
notified Randall's of its intent to abandon the leased premises and abandoned the
premises in March 2003. On May 29, 2003, Randall's issued a notice to Patton that
(1) stated an outstanding balance due for unpaid rent and fees of $10,353.48, (2)
demanded that the rental premises be vacated by May 29, 2003 lest a forcible-entry-and-detainer action be filed, and (3) notified of Randall's' intent "to file suit . . . to
recover all rent and other amounts, including, but not limited to, attorney's fees due
under the terms of the Sublease." When Patton did not comply by payment, Randall's
filed this action for breach of contract. 

 Randall's' live pleadings allege that Patton owed "a portion" of unpaid CAM
charges for the months of October 2002 through February 2003. Randall's sought a
money judgment for rent that it claimed was unpaid; unpaid CAM charges of $638.60
per month; unpaid delinquent charges; and the balance of rent due under the full lease
term after Patton stopped making rental payments and abandoned the leased premises. 
Randall's also sought consequential damages related to recovering possession and to
re-letting, renovating, and altering the premises, in addition to attorney's fees. Patton
answered by a general denial and claimed offsets on the amounts allegedly due. (2) 

 Randall's called Patton as its sole witness at the bench trial and relied on the
following exhibits: the sublease signed by the parties, the May 29, 2003 notice issued
by Randall's, and an unauthenticated computer printout that purported to compile
monthly amounts due. Patton disputed the amounts due under Randall's' compilation,
stating that certain arrearages had been corrected, but he agreed that he had made no
payments after vacating the leased premises. Patton also stated that he "did not know"
what CAM comprised and that his company had to carry its own insurance because
"Randall's didn't do that" and that his company incurred between "$15,000 and
$20,000" in expenses for repairs to bring the premises up to code so that insurance
could be obtained. 

 In response to his counsel's request, Patton read paragraph 3.3 of the sublease
into evidence. This paragraph governed CAM and required payment of "subtenant's
proportionate share of common area maintenance costs as described in section 10 of
the initial lease [and] subtenant's proportionate share of taxes as described in [s]ection
11 of the initial lease." At this juncture, the trial court questioned Randall's' counsel
about the absence of a copy of the master lease. When Randall's' counsel's only
response was that paragraph 3.3 referred to the master lease and that paragraph 1
incorporated the master lease by reference, the trial court emphasized yet again a
"need to see [either] paragraph 10 of the initial lease," or language in the sublease that
duplicated that language, and remarked on an inability "to make factual determinations
upon a lease that refers to a document that's not here," specifically, the master lease. 
After an unrecorded bench conference, Randall's "chose to go forward." 

 Patton testified that the sublease was the only lease he received, that he had
asked Randall's' headquarters to "delineate the CAM charges, what they were,"
because he "did not know," and that he ultimately notified Randall's' headquarters that
"we were going to have to move out because the CAM charges were way above what
we thought they would be." Patton stated that his firm had to do its own maintenance. 
Though the sublease refers to acceptance of the premises "AS IS, WHERE IS," by an
added interlineation, Patton was not able to test whether systems were functioning
because the premises had no electrical power. Patton described the condition of the
premises when he took possession as follows:

 The interior doors were missing. The interior glass was missing. The
ceiling tile was missing. The light fixtures had been removed, and naked
wires were hanging down from the ceiling. This was not only in one
room. This was in almost all the rooms. Water - there was [sic] some
water pipes that were leaking that we fixed before we could move in. 
And the air conditioning on the top of the building was not working.


 At the close of the bench trial, the trial court took the case under advisement and
asked that each party submit findings of fact and conclusions of law. The court later
rendered a take-nothing judgment in favor of Patton and signed his proposed findings
of fact and conclusions of law. Randall's filed a motion for new trial and a motion to
modify, correct, or reform the judgment, which the trial court denied after a non-evidentiary hearing. (3) 

Standard of Review

 We review the trial court's conclusions of law independently to determine their
correctness from the facts found. Butler v. Arrow Mirror & Glass, Inc., 51 S.W.3d
787, 792 (Tex. App.--Houston [1st Dist.] 2001, no pet.); see In re K.R.P., 80 S.W.3d
669, 674 (Tex. App.--Houston [1st Dist.] 2002, pet. denied) (stating that trial court's
legal conclusions are not binding on appellate court and are reviewable de novo). 
Findings of fact in a case tried to the court have the same force and effect as a jury's
verdict on questions and are reviewable for legal and factual sufficiency under the
same standards that govern jury findings. Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991); Min v. Avila, 991 S.W.2d 495, 500 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). When, as here, the appellate record contains
a complete reporter's record of the trial, the trial court's findings of fact are not
conclusive, but are subject to the same legal and factual sufficiency challenges. Min,
991 S.W.2d at 500. 

 As the party claiming breach of contract, Randall's had the burden of proof at
trial and must demonstrate on appeal that the evidence conclusively established all
vital facts in support of its claim. See Sterner v. Marathon Oil Co., 767 S.W.2d 686,
690 (Tex. 1989). In reviewing a legal-sufficiency challenge by the party who had the
burden of proof at trial, we examine the entire record to determine if the proposition
contrary to the jury's finding is established as a matter of law, and we will sustain the
challenge only in that case. See id., 767 S.W.2d at 690; see also City of Keller v.
Wilson, 168 S.W.3d 802, 810 & n.16 (Tex. 2005) (citing, among other cases, King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)) (listing four instances in
which legal sufficiency challenge must be sustained, as follows: (1) complete absence
of vital fact; (2) rules of law or evidence preclude according weight to only evidence
offered to prove vital fact; (3) evidence offered to prove vital fact is no more than
scintilla; and (4) evidence conclusively establishes opposite of vital fact). 

 In applying the legal-sufficiency standard, we must credit evidence that supports
the judgment if reasonable jurors could and disregard contrary evidence unless
reasonable jurors could not. City of Keller, 168 S.W.3d at 827. Accordingly, we
review the evidence in the light most favorable to the verdict, but disregard all
contrary evidence that a reasonable jury could have disbelieved. Ysleta Indep. Sch.
Dist. v. Monarrez, 177 S.W.3d 915, 917 (Tex. 2005) (citing City of Keller, 168 S.W.3d
at 812). If the evidence falls within the zone of reasonable disagreement, we may not
invade the fact-finding role of the trial judge, who alone determines the credibility of
the witnesses, the weight to give their testimony, and whether to accept or reject all
or any part of that testimony. See City of Keller, 168 S.W.3d at 822. 

Breach of Contract and Attorney's Fees


 Randall's' first issue challenges the take-nothing judgment rendered on its claim
that Patton breached the sublease contract. Randall's contends that it established its
right to prevail as a matter of law and therefore contends, in its second issue, that it
was also entitled to prevail on its request for attorney's fees. We disagree.

A. Anticipatory Breach--Failure of Proof

 Randall's' pleadings allege that Patton breached the sublease contract and was
liable for damages for the remaining lease term, in addition to other damages related
to re-leasing and modifying the vacated premises for a new tenant. Texas courts
recognize four possible causes of action by a landlord against a tenant who breaches
a lease by abandoning the premises. Austin Hill Country Realty, Inc. v. Palisades
Plaza, Inc., 948 S.W.2d 293, 300 (Tex. 1997). The landlord may (1) maintain the
lease and sue for rent as it becomes due; (2) treat the breach as an anticipatory
repudiation, repossess, and sue for the present value of future rentals reduced by the
reasonable cash market value of the property for the remainder of the lease term; (3)
treat the breach as anticipatory, repossess, release the property, and sue the tenant for
the difference between the contractual rent and the amount received from the new
tenant; or (4) declare the lease forfeited (if the lease so provides) and relieve the tenant
of liability for future rent. Id.

 Randall's' allegations in this case invoke the theory that Patton was liable for
damages for anticipatory breach of the sublease under the second or third options
outlined in Austin Hill Country Realty. See id. Regarding these two options, Austin
Hill Country Realty overruled prior law and adopted the rule applied in most American
jurisdictions by recognizing that a landlord has a duty to mitigate when a tenant
abandons the leased premises and stops paying rent. Id., at 295-300. (4) This principle
recognizes that a landlord who claims anticipatory breach has a duty to mitigate
because the landlord's claim is contractual in nature. Id. at 300. The Legislature has
codified the landlord's duty to mitigate as section 91.006 of the Property Code. See
Tex. Prop. Code Ann. § 91.006 (Vernon 2007). Randall's' pleadings thus triggered
a duty to mitigate the damages it sought.

 1. Patton's Indebtedness

 Randall's reiterates on appeal its postjudgment contentions that the undisputed
evidence conclusively establishes (1) by Patton's own testimony, that he did not pay
any remaining amounts due under the three-year lease after abandoning the premises
in March 2003 and (2) that Patton owed a total of $58,996.00 as "the basic monthly
rental amount of $2107 per month for 28 months," with one month's rental credited
for Patton's security deposit. (5) Randall's emphasizes that Patton acknowledged that
he did not make any monthly rental payments after March 2003, and that he signed
and received a copy of the sublease. (6)

 As the trial court emphasized in response to similar contentions, however,
Patton's trial testimony shows that he disputed the amounts that Randall's claimed he
owed, that he "did not know" the CAM charges, and that he was not certain whether
his claimed arrearages had been corrected. Referring specifically to Randall's' third
exhibit, a purported computerized printout of rental amounts due, the trial court
observed that Randall's did not substantiate the authenticity of the document at trial. 
Having neither authenticated the document nor explained its contents, Randall's never 
established Patton's indebtedness. In addition, the trial court reiterated the failure of
proof resulting from Randall's' failure to provide a copy of the master lease that had
been incorporated by reference into the sublease and with which Patton was required
to comply. 

 Without evidence of the master lease or its contents, the trial court could not
determine what effect, if any, that lease had on Randall's' claims or Patton's defenses. 
Specifically regarding the issue of default, though the sublease listed eight instances
that constituted default, including abandonment and failure to pay rent, the sublease
further specified that any event of default listed in the master lease would constitute
a default. Without the master lease in evidence, the trial court had no means of
determining the extent of any default, in particular a default relating to indebtedness. 
For the same reason, the trial court was not able to determine Patton's compliance with
the terms of the master lease, to which he was bound by the express terms of the
sublease. 

 Accordingly, we agree with the trial court's conclusion that Randall's did not
establish the threshold issue of Patton's indebtedness. 

 Having failed to provide competent evidence of Patton's indebtedness to
controvert Patton's assertions that he could not verify what he owed, Randall's failed
to carry its evidentiary burden of establishing a crucial element of its case. 

 We therefore hold that the evidence is legally sufficient to support the trial
court's failure to find in favor of Randall's on its claim that Patton anticipatorily
breached its contract with Randall's. 

 We overrule Randall's' first issue. 

B. Attorney's Fees

 In its second issue, Randall's contends that it conclusively established its right
to attorney's fees and the amount of those fees. A party whose claims are premised
on an oral or written contract may recover reasonable attorney's fees and costs. See
Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008). Under well-settled
law, a party must prevail to recover attorney's fees pursuant to chapter 38. Green
Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Ryan v. Abdel-Salam, 39 S.W.3d
332, 337 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). Randall's did not
prevail and therefore may not recover attorney's fees. 

 We overrule Randall's' second issue.

Challenges to Fact Findings


 Randall's' third issue challenges several of the trial court's findings of fact.

A. Randall's' Duty to Mitigate

 Consistent with its statutorily imposed duty to mitigate and its pleadings seeking
recovery for anticipatory breach, Randall's also had to prove the present value of the
future rentals under the unexpired term of the lease, reduced by either the reasonable
value of re-renting the leased premises or the rent paid by any new tenant. Austin Hill
Country Realty, 948 S.W.2d at 300; Marshall v. Telecomm. Specialists, Inc., 806
S.W.2d 904, 907 (Tex. App.--Houston [1st Dist.] 1991, no writ); see also Crabtree
v. Southmark Commercial Mgmt., 704 S.W.2d 478, 480 (Tex. App.--Houston [14th
Dist.] 1986, writ ref'd n.r.e.) (limiting damages sought by landlord who treated
tenant's conduct as anticipatory breach to recovery of present value of rentals that
accrue, reduced by reasonable cash-market value of unexpired term of lease); Speedee
Mart, Inc. v. Stovall, 664 S.W.2d 174, 177 (Tex. App.--Amarillo 1983, no writ)
(holding that landlord who treated tenant's conduct as anticipatory breach could
recover contractual rental reduced by amount received from new tenant). 

 Randall's' pleadings sought recovery of consequential damages for expenses
incurred in re-leasing, renovating and altering the premises for the new tenant. (7) The
amount of damages that Randall's avoided by re-leasing the premises would,
therefore, necessarily reduce any recovery against Patton. See Austin Hill Country
Realty, 948 S.W.2d at 299. Randall's' having contemplated re-leasing the premises
after Patton's anticipatory breach provided some basis from which Randall's could
prove "the reasonable value of re-renting the leased premises." See id., 948 S.W.2d
at 300; Speedee Mart, 664 S.W.2d at 177. 

 Yet, Randall's presented no evidence of either the rent that a new tenant was
paying or the reasonable value of the re-leasing of the premises contemplated by its
pleadings, and nothing in the record provides a basis for determining either of those
values. Even if we were to assume that the $2,107 per month rental stated in the
sublease represents the present value of the 28 months of future rentals remaining
under the lease, Randall's failed to satisfy its burden to demonstrate either the rent that
a new tenant was paying or the reasonable value of the re-leasing, in keeping with its
duty to mitigate. Tex. Prop. Code Ann. § 91.006; Austin Hill Country Realty, 948
S.W.2d at 300. 

B. Randall's' Failure of Proof

 In addition, Randall's challenges the fourth finding of fact, which recites that
Randall's "did not call any witnesses to present testimony in support of its claims,"
and the eighth finding, which also relates to Randall's' failure of proof. 

 Regarding the fourth finding, Randall's protests that it presented Patton as a
witness and that it was entitled to prove its case through him. We agree. But
Randall's did not prove its case, as held above. The record reflects that the trial court
signed the findings of fact before conducting the hearing on Randall's' postjudgment
motions. The reporter's record of the hearing on those motions contains the following
colloquy between counsel for Randall's and the trial court:

 COUNSEL: [W]hen I received the Judgment and . . . the Findings of
Fact and Conclusions of Law, the only thing that I can
conclude, Judge . . . is that the Court expressed during the
trial that it had some concern about the fact that this was a
sublease and there was no initial lease that was submitted
into evidence. 


 We took a break, and we talked about that. I chose to go
forward.


 THE COURT: With no witnesses, either, except you called the defendant,
presented no witnesses.


As the ensuing discussion between counsel and the trial court further reflects, the trial
court recounted in detail the failure of proof that arose from (1) lack of the master
lease and (2) lack of evidentiary authentication for the exhibits on which Randall's
relied. The record thus reflects that the trial court acknowledged Randall's' having
called Patton as a witness, but that Randall's "did not call any witnesses to present
testimony in support of its claims," as the fourth finding of fact recites and, therefore,
failed to present evidence to support its claim of anticipatory breach. The fourth
finding of fact thus conforms to the record and was not error.

 The eighth finding of fact states that Randall's "did not offer any testimony" to
support its compilation of the amounts it claimed were due. Randall's argues that its
trial exhibits were admitted without objection and that they were properly authenticated
by a business-records affidavit filed with Randall's' amended petition. Though
Randall's purports to challenge the fact finding, its argument raises an implicit attack
on an evidentiary ruling, as explained below. 

 The trial court's finding refers to the lack of live testimony. As the court
commented during the postjudgment hearing, ". . . [T]he only live testimony that
[Randall's] had was [that Patton] didn't know how many payments he had made." 
Commenting further regarding the exhibits that Randall's offered, the trial court
acknowledged having "reviewed them," but reiterated that Randall's nonetheless "did
not have the original lease that the sublease referred to repeatedly . . . to explain terms
of that sublease. . . . And I warned you at the time [that] there is no explanation . . . ." 
Regarding Randall's' compilation of arrearages, the trial court commented,

 You didn't have anybody testify that he owed this amount. You
introduced, again without any supporting testimony, a piece of paper that
had some amounts on it, but there was no explanation. Again[,] the
defendant hadn't prepared it, so there was no explanation for that sheet,
sir.


Though Randall's asked during the same hearing that the evidence be reopened to
consider its business-record affidavit and the master lease, the trial court denied that
request, stating regarding the master lease,

 Sir, I asked you for that at the beginning and gave you a break to
give me that at the beginning . . . . And you said that you chose to go on
without the initial lease, . . . [I am] not going to grant that at this late date. 
. . . [I]t does present some type of harm . . . [to] add evidence at the end
of the trial.


 In actuality, therefore, Randall's' challenge is to the trial court's refusal to reopen
the evidence after trial. Rule 270 of the Rules of Civil Procedure permits reopening the
evidence when this clearly appears necessary to the administration of justice. See Tex.
R. Civ. P. 270 (authorizing trial courts to "permit additional evidence" except after jury
has returned its verdict in jury trial); Saunders v. Lee, 180 S.W.3d 742, 745-46 (Tex.
App.--Waco, 2005, no pet.). We review the trial court's ruling for abuse of discretion. 
Id. Reviewing the record has persuaded us that, in addition to seeking to remedy its
evidentiary shortcomings, Randall's' arguments attempted to alter its pleadings and trial
strategy, to Patton's prejudice. 

 As in its postjudgment motions, Randall's no longer seeks compensatory damages
and argues that, "Regardless of the CAM, taxes and insurance provisions of the contract,
paragraph 3.1 of the Sublease unequivocally stated that Patton agreed to pay $2,107.00
per month from July 1, 2002 through June 30, 2005." Randall's has thus abandoned its
request for allegedly unpaid CAM. In contrast to its pleadings, Randall's now seeks to
recover only the minimum monthly rental due for the 28 months remaining in the lease
term and asks that we render judgment in its favor for $58,996.00, on the ground that
the trial court ignored undisputed facts and arbitrarily denied any recovery. 

 As held above, Randall's sued Patton on the ground that he anticipatorily
breached the sublease by abandoning the premises. A landlord whose tenant breaches
the lease by abandoning the premises has four possible options. Austin Hill Country
Realty, Inc., 948 S.W.2d at 300. Analysis of these options demonstrates that they are
neither alternative nor cumulative. 

 We have held that Randall's failed to prove its case under the anticipatory breach
options stated in its pleadings. Under the two remaining options, Randall could (1)
maintain the lease and sue for rent as it became due, or (2) declare the lease forfeited
and relieve Patton of any future liability. See id. Randall's' litigation strategy
forecloses either of the two remaining options. The first remaining option does not
apply because Randall's seeks to recover all of the remaining rent at once, rather than
as payments accrue, and has demonstrated an intent to lease the premises to a new
tenant, with the resulting duty to mitigate its damages that we have addressed. See id. 
The second remaining option is likewise impermissible, given this litigation. Randall's'
attempt to alter its trial theories and strategy comes too late not to prejudice Patton. See
generally, Tex. R. Civ. P. 63 (governing amended pleadings at trial); Chapin & Chapin,
Inc. v. Tex. Sand & Gravel Co., 844 S.W.2d 664, 665 (Tex. 1992) (citing Hardin v.
Hardin, 597 S.W.2d 347, 350-51 (Tex. 1980) (addressing prejudicial, substantive
amendments that change nature of trial)).

 We hold that the trial court properly restricted Randall's to its pleadings, theories,
and trial strategy and that the record reflects that the trial court's ninth finding of fact
is correct. In the final portion of its third issue, Randall's argues that the trial court's
second, fifth, and sixth conclusions of law are incorrect because the court's findings of
fact are incorrect. Having rejected the latter contention, we hold that the challenged
conclusions are not erroneous. 

 We overrule Randall's' third issue.

Judgment against Severed Party


 In its fourth issue, Randall's contends that the trial court committed reversible
error that warrants either rendition in favor of Randall's or remand for a new trial
because the judgment grants relief to Brian Weldon, who was initially a plaintiff with
Patton and the Linux Professional Group, but whom the trial court ordered severed after
Weldon filed a petition in bankruptcy. We disagree.

 The judgment recites that the trial court found in favor of "Defendants, Bill
Patton, Bryan H. Weldon and Linux Professional Group" on Randall's' claim for breach
of contract. Yet, the trial court's findings of fact and conclusions of law refer only to
Patton. During the hearing on Randall's' postjudgment motions, Randall's' counsel
alerted the trial court that its final judgment included Weldon, despite his having been
severed. The trial court confirmed that the judgment was indeed incorrect and offered
to "conform the judgment to what my findings are. I don't have a problem with doing
that." Before adjourning the proceedings, the trial court restated its offer to "conform
that judgment." Yet the record before us does not show that a request was ever made.

 As the trial court recognized in offering to conform the judgment to the court's
findings, which do not refer at all to Weldon, "findings of fact made pursuant to Rules
297 and 298," as here, "control for appellate purposes" over findings recited in a
judgment. See Tex. R. Civ. P. 299a; Guridi v. Waller, 98 S.W.3d 315, 317 (Tex.
App.--Houston [1st Dist.] 2003, no pet.). "[T]he separately-filed findings of fact,"
which do not refer at all to Weldon, "control," see Guridi, 98 S.W.3d at 317, and also
conform to the trial court's pronouncements in response to Randall's' trial-court
complaint. Accordingly, there is no basis for reversal, whether by rendition or remand
for trial. Because this Court may now do what the trial court was never asked to do, we
reform the judgment below by deleting any reference to the claims of the severed party
Weldon. 

 We sustain Randall's' fourth issue to the extent that we reform the judgment of
the trial court, but overrule Randall's' requested relief. 

Conclusion

 We overrule Randall's' issues except that we reform the judgment by deleting any
reference to the claims of the severed party Weldon. We affirm the judgment of the trial
court in all other respects. 




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.
1. We will refer to appellee as "Patton." Patton's full name is Frederick William Patton
III. Patton d/b/a Linux Professional Group is the sole appellee in this cause. Weldon
was initially a named defendant, but the trial court severed Randall's' claims against
Weldon into a separate cause after he filed a voluntary Chapter 7 bankruptcy petition. 

2. Patton also asserted a counterclaim, which the trial court refused to consider for
failure to pay a filing fee. 
3. During the hearing, Randall's moved to reopen the evidence to consider a business-records affidavit authenticating its three trial exhibits and also offered to submit the
master lease. The trial court refused, and Randall's does not challenge the ruling on
appeal. The comments of the trial court at the posttrial hearing show that Randall's
had been offered an opportunity to interrupt the trial so that a copy of the master lease
could be obtained, but elected to proceed without it. 
4. The minority rule derives from a view of the tenant as the "owner" entitled to possess
the premises under the full term of the lease and thus liable for the remainder of the
lease term, despite abandoning the premises. See Austin Hill Country Realty, Inc. v.
Palisades Plaza, Inc., 948 S.W.2d 293, 295-96 (Tex. 1997) (citing Reid v. Mut. of
Omaha Ins. Co., 776 P.2d 896, 902, 905 (Utah 1989)). Under the minority rule, the
landlord could recover rents periodically for the remainder of the lease term after a
tenant abandoned the leased premises; the landlord had no duty to mitigate with
respect to the leased premises. Id. at 296 (citing Gruman v. Investors Diversified
Servs., 247 Minn. 502, 505-06, 78 N.W.2d 377, 379-80 (1956)).
5. Based on these contentions, Randall's has apparently abandoned some of the damages
initially specified in its pleadings. We address the implications of this posture in our
discussion of Randall's' third issue. 
6. Relying on Davidow v. Inwood N. Prof'l Group, 747 S.W.2d 373, 375 1988),
Randall's also argues on appeal that "the duty to pay rent is independent of other
covenants in a lease" and that Patton had a duty to pay "minimum rent" that is
"independent of any other covenants in the lease." Randall's thus contends that
Patton had a continuing duty and, therefore, an obligation, to pay rent. 


 We address the argument because Randall's' legal-sufficiency challenge fairly
encompasses it, in that Randall's raises as a legal principle that it contends would
vitiate the trial court's ruling in favor of Patton. See City of Keller v. Wilson, 168
S.W.3d 802, 810 & n.16 (Tex. 2005) (describing second instance in legal sufficiency
challenge must be sustained as situation presented when rules of law or evidence
preclude according weight to only evidence offered to prove vital fact). Randall's'
contention is flawed for two reasons. The first reason is that Randall's did not
establish either Patton's indebtedness or its own damages. Randall's' contention also
misinterprets Davidow, in which the supreme court rejected the interdependency of
the landlord's and tenant's covenants and held that "the tenant's obligation to pay rent
and the landlord's implied warranty of suitability are . . . mutually dependent." 
(Emphasis added). Compare Davidow, 747 S.W.2d at 376, with id., 747 S.W.2d at
377. Davidow does not conflict with our disposition. 
7. It is not clear from the record whether Randall's actually rented the premises to
another tenant or merely contemplated renting them again.