**B & H AIRCRAFT SALES, INC.
and Baylis H. Harriss, Jr.,
Appellants,**

v.

**ENGINE COMPONENTS, INC., Appellee.**

No. 04–95–00826–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 2, 1996.

Stephen D. Finch, Finch & Finch, Seguin, for Appellants.

Paul T. Curl, Murray & Curl, Inc., Thomas B. Black, San Antonio, for Appellee.

Before CHAPA, C.J., and STONE and GREEN, JJ.

CHAPA, Chief Justice.

This is an appeal from the judgment entered in a commercial landlord/tenant dispute, whereby appellee was awarded back rent, utility costs, and attorney's fees based upon its claims under two separate leases and appellants were awarded nothing on their counterclaim. In eight points of error, appellants contend that 1) the trial court erred in granting appellee a partial summary judgment; 2) the evidence is insufficient to support the jury's finding of utility charges owed; 3) the evidence is insufficient to support the denial of appellants' counterclaim; 4) the trial court erred in refusing to make additional findings; 5) the evidence is insufficient to support the denial of appellants' claim for attorney's fees; and 6) the trial court erred in awarding appellee attorney fees. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1993, appellant, B & H Aircraft, entered into two lease agreements with appellee, ECI. The first lease agreement involved a 10,000 square foot airplane hangar located at the New Braunfels Municipal Airport. In addition to monthly rental payments, B & H agreed to bear the cost of all utility service to the premises. This lease was referenced at trial as the "Hangar Lease."

The second lease involved certain other facilities and real property located at the New Braunfels Municipal Airport which were to be used as a service station for light aircraft. In addition to an adjustable rental rate, the lease provided that B & H would bear the cost of utility service to the premises. This lease was referenced at trial as the "FBO Lease." Appellant, Baylis E. Harriss, Jr., the president of B & H, personally guaranteed payment of all sums due under the FBO Lease agreement.

B & H admits that it did not pay rent on the Hangar Lease for eight months. As a result, ECI instituted a forcible entry and detainer action in the justice court and the county court at law in order to evict B & H from the premises covered by the Hangar Lease. ECI also initiated suit in district court to recover unpaid rent and utilities under both leases.

According to B & H, it refused to pay the first eight months' rent on the Hangar Lease because the condition of the leased premises resulted in B & H being unable to obtain an occupancy certificate from the City of New Braunfels. The parties reached an agreement in regard to the forcible entry and detainer action, whereby B & H would remain on the premises covered by the Hangar Lease and immediately begin paying rent,

while ECI agreed that it would make certain repairs to the premises. The parties further agreed that the remaining disputes would be resolved through the suit pending in district court.

B & H then filed a counterclaim in district court claiming damages as a result of ECI's breach of the FBO Lease agreement. According to B & H, in exchange for B & H's agreement to assume maintenance responsibility for the roadways and taxiways covered by the lease, ECI agreed to transfer ownership of $33,000 worth of personal property to B & H. B & H contends that several items agreed to had not been delivered.

ECI subsequently filed a motion for summary judgment. ECI's summary judgment evidence established rent due and unpaid utility charges under both leases. In its response to ECI's motion for summary judgment, B & H disputed the utility charges under both leases and disputed whether they received notice of the rent escalation under the FBO Lease. While it acknowledged not paying rent for eight months under the Hangar Lease, B & H argued that such nonpayment is excused by the fact that the deficient condition of the property constituted a breach of ECI's implied warranty of suitability.

The trial court granted ECI's motion for summary judgment as to the unpaid rent under the Hangar Lease and denied the remainder of ECI's motion. The remaining issues were tried to a jury. The jury found in favor of ECI on all issues. The trial court entered a judgment which incorporated the previous partial summary judgment and which awarded ECI the unpaid utility charges under both leases, rent due under the FBO Lease, and attorney's fees. The judgment further reflected the jury's verdict that B & H was entitled to nothing on its counterclaim.

### ARGUMENTS ON APPEAL

In their first point of error, appellants contend that the trial court erred in granting partial summary judgment because material fact issues exist in regard to appellants' affirmative defense and because the trial court misapplied the law to the facts.

The standard by which a summary judgment is to be reviewed on appeal is whether the movant met its burden for summary judgment by establishing that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a(c). If a plaintiff moving for summary judgment establishes each element of its cause of action as a matter of law, then the nonmovant must come forward with summary judgment evidence sufficient to raise a fact issue on each element of its affirmative defense in order to avoid summary judgment. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

■ In *Davidow v. Inwood North Professional Group–Phase I,* 747 S.W.2d 373 (Tex. 1988), the supreme court recognized that a commercial landlord impliedly warrants that the leased premises are suitable for their intended commercial purpose.

> This warranty means that at the inception of the lease there are no latent defects in the facilities that are vital to the use of the premises for their intended commercial purpose and that these essential facilities will remain in a suitable condition. If, however, the parties to a lease expressly agree that the tenant will repair certain defects, then the provisions of the lease will control.

*Id.* at 377. The breach of an implied warranty of suitability is a complete defense to nonpayment of rent. *Neuro–Developmental Assoc. of Houston v. Corporate Pines Realty Corp.,* 908 S.W.2d 26, 28 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

■ In the present case, it is undisputed that B & H failed to pay rent under the Hangar Lease for the first eight months of the lease term. Therefore, in order to preclude summary judgment on ECI's claim of rent due under the lease, it is necessary for B & H to establish that a material fact exists as to each element of its affirmative defense of breach of implied warranty of suitability. *See Brownlee,* 665 S.W.2d at 112; *Dickey v. Dickey,* 908 S.W.2d 311, 313 (Tex.App.—San

Antonio 1995, no writ). In other words, B & H's summary judgment evidence must indicate that latent defects existed in the leased premises at the inception of the lease and that such defects were vital to the use of the premises for their intended commercial purpose. *See Davidow,* 747 S.W.2d at 377.

■ The only evidence B & H offered as part of its response to ECI's motion for summary judgment that would support its allegation of breach of implied warranty of suitability was the affidavit of Baylis Harriss, the president of B & H. Harriss asserted as follows:

> Subsequent to [B & H's] lease of the premises ... it was ascertained that certain deficiencies existed which prevented [B & H] from obtaining a certificate of occupancy from the City of New Braunfels so that the premises could be put to productive use. Among these deficiencies, there were insufficient or inadequate fire extinguishers, the existence of a hole in an internal office wall where some form of instrument had been removed, the lack of proper banister on the stairway, the existence of certain unidentified chemicals on the premises and certain deficiencies in the electrical wiring and plumbing.

B & H contends that Harriss's affidavit is sufficient to raise a fact issue regarding whether ECI breached its implied warranty of suitability. We disagree.

First, there is no evidence that any of the defects alleged by Harriss in his affidavit were latent. Clearly, inadequate fire extinguishers, a hole in the wall, an improper banister on the stairway, and the existence of chemicals on the premises are not latent defects. As to the allegations of "certain deficiencies in the electrical wiring and plumbing," there is nothing in Harriss's affidavit to indicate that these deficiencies were not discoverable prior to the inception of the lease. Harriss's affidavit does not specifically allege that the deficiencies it describes were latent, nor is his affidavit specific enough to raise a fact issue in that regard. As such, B & H failed to raise a fact issue as to the element of latency in its claim of breach of implied warranty of suitability.

Moreover, Harriss's affidavit does not adequately establish that the defects described prevented the commercial use for which the premises were intended. Although the affidavit states that B & H was prevented from obtaining a certificate of occupancy, this statement is conclusory. B & H offered no evidence that it ever applied for or otherwise attempted to obtain a certificate of occupancy.

Assuming B & H did apply for an occupancy certificate, Harriss's affidavit states that the defects prevented B & H from obtaining an occupancy certificate, not from productively using the premises. There is no evidence that the acquisition of an occupancy certificate was vital to the use of the premises. Accordingly, B & H failed to raise a fact issue as to the element of vitality in its claim of breach of implied warranty of suitability.

If the nonmovant does not raise a fact issue as to every element of its affirmative defense, summary judgment is proper. *Dickey,* 908 S.W.2d at 313; *Cook v. Smith,* 673 S.W.2d 232, 235 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). In light of the record before us, we find that the trial court did not err in granting ECI partial summary judgment for unpaid rent under the Hangar Lease. Appellants' first point of error is overruled.

In their second point of error, appellants contend that the trial court erred in entering judgment on the verdict for the total amount of utility charges claimed because the jury's finding is against the great weight and preponderance of the evidence.

■ In considering a factual sufficiency point, we must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, we are not fact finders, we do not pass upon the credibility of witnesses, nor do we substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion

could be supported. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ At trial, ECI alleged that B & H failed to pay several utility bills for the utilities used at the leased premises. It is undisputed that B & H was responsible for utility charges under both the Hangar Lease and the FBO Lease. The utility bills in question were admitted into evidence, without objection. With respect to the premises leased under the FBO Lease, there are four bills from four different meters, totaling $459.19. All of those charges were incurred in April of 1994. As for the premises controlled by the Hangar Lease, there are eight bills from the same meter totaling $1,467.08. These charges were incurred from July of 1993 to April of 1994.

The jury determined that B & H was responsible for $1,926.27 in unpaid utility charges, the full amount alleged by ECI and evidenced by the bills. B & H contends that the evidence is insufficient to support the jury's finding. We disagree.

Baylis Harriss, the president of B & H, testified that B & H had paid all of the utility bills that he believed it was responsible for. However, Ty Stoller, vice president of finance for ECI, testified that the amounts shown on the bills remain outstanding. Stoller testified that B & H was notified repeatedly that the bills were delinquent. There was no evidence offered that would indicate that the bills had in fact been paid.

With respect to a portion of the utilities owed on the Hangar Lease, B & H contends that it was not responsible for the bills incurred prior to November of 1993, totaling $672.51. B & H alleges that the Hangar Lease did not go into effect until November of 1993 and, as such, B & H is not responsible for the utility charges incurred prior to that time. However, Stoller testified that B & H requested that it be allowed to move into the hangar prior to the point in time that its rent obligations began in order to ready the hangar for use. Stoller testified that B & H moved into the hangar in July of 1993 and was, therefore, charged for utilities from that point in time.

■ The lease agreement supports Stoller's testimony. The Hangar Lease provides that "[t]his lease shall be for a term of three years beginning on the 15th day of July, 1993...." The lease goes on to provide that monthly rental installments would be due on the first of every month, beginning November 1, 1993. Clearly, the November 1, 1993, inception date refers only to B & H's obligation to pay rent, not to any of its other obligations under the lease.

Given this evidence, the jury's determination that B & H was responsible for utilities under the Hangar Lease from July of 1993 is warranted. Further, because there is no evidence that the remaining bills had been paid or that B & H was not obligated to pay those bills, the jury was justified in finding that B & H was responsible for all of the outstanding bills introduced into evidence. Appellants' second point of error is overruled.

■ In their third point of error, appellants contend that the trial court erred in entering judgment on the verdict denying B & H's claimed damages because the jury's finding is against the great weight and preponderance of the evidence.

Under the terms of the FBO Lease, B & H was to receive several items of personal property from ECI in exchange for its agreement to take responsibility for repairing certain roads and taxiways on the leased premises. B & H acknowledges receipt of some items, but alleges that other items agreed to were never delivered. When ECI filed suit for unpaid rent, B & H filed a counterclaim alleging that ECI breached the FBO Lease when it failed to deliver the remaining assets. At trial, the jury determined that ECI had complied with the FBO Lease agreement and that B & H was entitled to no damages.

The crux of this controversy involves exactly what property the parties agreed would be transferred. The evidence supports several conclusions. The FBO Lease itself states that the property to be transferred is listed in Exhibit C to the lease. However, B & H contends that the property to be transferred was listed in correspondence between B & H and ECI that pre-dates the lease by

several months. There is, in fact, an Exhibit C attached to the lease in the record. However, the testimony regarding this exhibit is conflicting.

Harriss, president of B & H, testified that Exhibit C was not attached to the lease at the time the lease was signed. Stoller, vice president of ECI, testified that Exhibit C was attached to the lease at some point after the lease was executed. Ed Salmeron, president of ECI and the individual who negotiated the property transfer for ECI, testified that Exhibit C was attached to the lease when it was executed.

The record contains a document entitled "memorandum of agreement," which indicates that the assets to be transferred had not been fully negotiated or finalized at the time the lease was executed and the lease would go into effect without a final agreement regarding the personal property to be transferred. The agreement goes on to provide that if a final agreement regarding the property was not reached and steps were not taken to formally incorporate the agreement into the lease, either party could terminate the entire lease agreement. Clearly, neither party terminated the lease under this provision.

In addition to the conflicting testimony regarding the agreement itself, there was also conflicting testimony regarding whether the complete transfer occurred. B & H argues that even if Exhibit C did constitute the agreement of the parties, several items listed on Exhibit C were never delivered. Harriss and other B & H representatives testified that ECI did not deliver all of the property pursuant to the agreement. On the other hand, Salmeron testified that all of the property was delivered as agreed.

Based upon this record, the jury could have concluded that Exhibit C was the final agreement of the parties, that it was attached to the lease when it was executed, and that all of the property agreed upon was delivered. The jury also could have concluded that Exhibit C was not attached to the lease when it was executed, that the parties, after finalizing the agreement, attached Exhibit C to the lease pursuant to the terms of the memorandum of agreement, and that all of the property agreed upon was delivered.

Finally, and most likely, the jury could have concluded that no final agreement was ever reached, several items of property were delivered, and no one complained until a separate disagreement arose and suit was filed. In any event, the evidence supports the jury's conclusion that ECI complied with the terms of the FBO Lease agreement. Appellants' third point of error is overruled.

■ In their eighth point of error, appellants contend that the trial court erred in entering judgment awarding ECI attorney's fees found by the jury in response to questions 3(a) & (b) because ECI is not a prevailing party in the proceedings from which those fees arose.

The trial court awarded ECI attorney's fees for its efforts in enforcing the Hangar Lease in the justice court and the county court at law based upon the jury's answers to questions 3 and 11. In its answer to question 3, the jury determined that ECI was entitled to (a) $1,500 for eviction proceedings in the justice court and (b) $2,525 for eviction proceedings in the county court at law. In its answer to question 11, the jury determined that B & H was entitled to (a) $1,437.50 for eviction proceedings in the justice court and (b) $1,437.50 for eviction proceedings in the county court at law. The trial court offset the amounts awarded to both parties, resulting in an award of $1,150.00 to ECI for its efforts in the justice court and the county court at law.

The recovery of attorney's fees relating to actions taken under the Hangar Lease is based upon language in the lease which provides that the prevailing party in any dispute under the lease shall recover attorney's fees. Appellants contend that because, after the proceedings in the justice court and the county court at law, it maintained possession of the leased premises, it was the prevailing party. As such, B & H asserts that the trial court properly awarded B & H its attorney's fees as a credit against the award of attorney's fees to ECI. B & H complains, however, that the trial court erred in awarding any attorney's fees to ECI for its actions in the justice court and the county court at law.

The outcome of the eviction proceedings in the justice court and the county court at law was an agreed judgment in which ECI agreed to make certain repairs to the Hangar Lease, B & H agreed to pay its rent, and both parties agreed to dismiss the eviction proceeding and vacate the agreed judgment after one month. The agreement further provided that the parties would resolve their differences in the pending district court case which is the subject of this appeal. Accordingly, there was no prevailing party in the justice court or the county court at law. The result was a settlement whereby both parties benefitted.

Because there was no prevailing party and the parties agreed via the lower court proceedings to resolve their differences in the district court, it is reasonable to conclude that the outcome in the district court should control as it resulted in the ultimate resolution of the dispute and the enforcement of the lease. In fact, the agreed judgment in the county court at law provides that:

> ... this judgment is without prejudice, and ... shall not be asserted as a bar to any party's requesting, in the lawsuit in the [district court], any attorney's fees and costs associated with the proceeding in this court or in the justice court.

This language indicates that the parties agreed to allow the outcome of the district court proceedings to control the resolution of attorney's fees for the entire dispute. Because we have affirmed the trial court's judgment in favor of ECI, ECI is the prevailing party in the district court action and is entitled to attorney's fees under the lease. Appellants' eighth point of error is overruled.

Appellants' points of error four through seven are contingent on our finding in appellant's favor on point of error three. Because we have overruled point of error three, it is not necessary for us to address appellant's remaining points of error. The judgment of the trial court is affirmed.