# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00694-CV

**Gym-N-I Playgrounds, Inc., Appellant**

**v.**

**Ron Snider, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. C2002-332B, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## O P I N I O N

This case centers on the applicability and effect of an "as is" clause in a commercial lease. Gym-N-I Playgrounds, Inc., leased a building from Ron Snider. Under the terms of the lease, Gym-N-I agreed to accept the building "as is" and disclaimed reliance on warranties and representations. After the building was destroyed by fire, Gym-N-I sued Snider, asserting various claims relating to the condition of the building. Relying in part on the "as is" clause, Snider moved for summary judgment, which the district court granted. On appeal, Gym-N-I argues that summary judgment was improper because the lease containing the "as is" provision had expired and that the provision was otherwise unenforceable. For the reasons stated below, we affirm the district court's grant of summary judgment.

**BACKGROUND**

The following facts are not in dispute. Snider originally owned both Gym-N-I, a playground equipment manufacturing company, and the building in which Gym-N-I was located. Patrick Finn and Bonnie Caddell had both worked in the building for several years as Gym-N-I employees. Starting in 1987, Finn performed numerous tasks for Gym-N-I, including installing playground equipment, purchasing materials, maintaining mechanical equipment, looking after human resources concerns, and performing other odd jobs. Caddell performed bookkeeping services for the company, first as an independent contractor from 1984 to 1987, then continuing as a Gym-N-I employee for another six years.

Snider's approximately 20,075-square-foot building was slightly over the threshold triggering the fire sprinkler requirement under the City of New Braunfels Code of Ordinances.[1] The New Braunfels fire marshal, Elroy Friesenhahn, communicated this fact to Snider. Although Friesenhahn recommended that Snider install a fire sprinkler system, he did not require it because the building was only 75 square feet over the square-footage threshold and because he was uncertain

---

[1] Section 54-86(a) of the City of New Braunfels Code of Ordinances adopted "The Standard Fire [Prevention] Code" published by the Southern Building Code Congress International, Inc. Section 3605 of the Standard Fire Prevention Code contains requirements for when an automatic fire extinguishing system would be required. Buildings over 20,000 square feet that stored only moderately combustible materials would require such a system.

2

whether hazardous materials were stored in the building.[2]  Snider considered installing a sprinkler system but ultimately chose not to do so.

Finn and Caddell bought the Gym-N-I business from Snider on September 30, 1993, and entered into a commercial lease of the building with Snider.  The lease contained the following provision:

> Tenant [Gym-N-I] accepts the Premises "as is."  Landlord [Snider] has not made and does not make any representations as to the commercial suitability, physical condition, layout, footage, expenses, operation or any other matter affecting or relating to the premises and this agreement, except as herein specifically set forth or referred to and Tenant hereby expressly acknowledges that no such representations have been made.  Landlord makes no other warranties, express or implied, of merchantability, marketability, fitness or suitability for a [document not legible]. Any implied warranties are expressly disclaimed and excluded.

On January 31, 1995, Gym-N-I and Snider executed an amendment to the lease.  The amendment provided that, upon 90-day advance written notice, Gym-N-I would have the option of renewing the lease for three two-year terms.  The amendment further provided that the terms and conditions of the original lease would apply to the renewal term, except that rent during this period would be determined by mutual agreement of the parties.

The term of the original lease expired on September 30, 1996, without Gym-N-I having exercised the renewal option.  However, for nearly four years thereafter Gym-N-I continued to pay, and Snider continued to accept, rent each month.  Other than the unexercised renewal option,

---

[2]  Friesenhahn explained that he compromised and only required installation of a four-foot fire curtain on one of the walls.  He also testified that Snider met this requirement.

the sole written instrument in the record contemplating a continuation of the original lease was a holdover clause.

On August 10, 2000, a fire completely destroyed the building and its contents. Gym-N-I sued Snider,[3] asserting claims of negligence, fraud under the Deceptive Trade Practices Act ("DTPA"), and breach of the implied warranty of suitability. Specifically, Gym-N-I argued that Snider's failure to install a sprinkler system as required by the City of New Braunfels Code of Ordinances constituted gross negligence and negligence per se and that leasing the premises in such a condition violated the DTPA and breached the implied warranty of suitability. Gym-N-I also argued that Snider negligently failed to inform it of an overloaded electrical system and other wiring problems in the building.

Snider filed a traditional motion for summary judgment asserting that all of Gym-N-I's claims were barred by the "as is" clause and by a valid waiver-of-subrogation clause. Snider further argued that the lease contained other valid waivers of express and implied warranties that barred certain claims and that Gym-N-I had admitted that no misrepresentations had been made by

---

[3] Gym-N-I's suit originated as a third-party action in a subrogation suit. In the aftermath of the fire, Gym-N-I contacted Snider proposing more than $193,000 to settle what it owed Snider under the lease and other equipment rental agreements. Snider acknowledged receipt of all obligations owed and executed a release and indemnity provision. Snider then received an additional $422,221.81 in insurance proceeds from American Economy Insurance Company. American Economy thereafter filed a subrogation suit against Gym-N-I to recover the money American Economy had paid to Snider. American Economy claimed that flammable materials stored by Gym-N-I were at least a partial cause of the fire and the resulting damages. Gym-N-I filed its third-party action against Snider in response to American Economy's subrogation action. A number of other parties were named as defendants or third-party defendants, but this appeal concerns only Gym-N-I's claims against Snider.

4

Snider. *See* Tex. R. Civ. P. 166a(c). The district court granted partial summary judgment in favor of Snider, which was later merged into a final judgment.[4] This appeal followed.

## DISCUSSION

Gym-N-I brings two issues on appeal. First, it contends that the "as is" clause was not carried over in the holdover period of the lease. Second, Gym-N-I contends that, on various other grounds, the "as is" clause is unenforceable against its claims.[5]

### *Standard of review*

Because the propriety of a summary judgment is a question of law, we review the district court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We affirm if summary judgment is warranted on any ground asserted to the trial court. Tex. R. Civ. P. 166a(c); *Cincinnati Life Ins. Co.*, 927 S.W.2d at 625. In deciding whether there is a disputed material fact issue, we take evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any

---

[4] The trial court granted partial summary judgment on all but the breach-of-contract claim, which Gym-N-I and Snider later settled.

[5] Gym-N-I also attacks Snider's reliance on the waiver of subrogation provision. Because our disposition rests on our application of the "as is" clause, we need not reach this argument.

5

doubts in the nonmovant's favor. *American Tobacco Co.*, 951 S.W. 2d at 425; *Nixon*, 690 S.W.2d at 548-49.

***Whether the "as is" clause remained in effect***

In its first issue, Gym-N-I asserts that the "as is" clause in the original lease did not survive during the month-to-month tenancy under which it was leasing the property at the time of the fire. The original lease term ran from September 30, 1993, until midnight on September 29, 1996.[6] The fire occurred almost four years later. Gym-N-I concedes that, at the time of the fire, the holdover provision of the original lease applied. That provision states:

> 13. HOLDING OVER: In the event of holding over by Tenant after expiration or other termination of this lease . . . . No holding over by Tenant after the expiration of the term of this Lease shall be construed to extend the term of this Lease . . . . Any holding over without written consent of Landlord shall constitute a lease from month-to-month, under the terms and provisions of this lease to the extent applicable to a tenancy from month-to-month . . . .

Gym-N-I had continued to pay monthly rent to Snider during that time.

---

[6] The lease term provision reads as follows:

> 2. TERM: Subject to and upon the terms and conditions as set forth herein, or in any exhibit or addendum hereto, this lease shall continue in full force and effect for a term of 36 months beginning on the 30th day of September, 1993 . . . and ending at midnight on the 29th day of September 1996, unless sooner terminated or extended to a later date under any other term or provision hereof.

Gym-N-I asserts that the holdover provision failed to incorporate the "as is" clause and that only a formal, written, lease extension or renewal could carry that provision beyond the term of the original lease. We disagree.

We construe an unambiguous contract as a matter of law, enforce the unambiguous language as written, and give the terms their plain, ordinary, and generally accepted meaning. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 424 (Tex. 2000); *Heritage Res., Inc. v. Nationsbank*, 939 S.W.2d 118, 121 (Tex. 1996); *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981). It is assumed that every clause is intended to have some effect. *Heritage Res.*, 939 S.W.2d at 121; *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983).

The lease's holdover provision states that "[a]ny holding over . . . shall constitute a lease from month-to-month, *under the terms and conditions of this lease* to the extent applicable to a tenancy from month-to-month . . . ." (Emphasis added.) We are bound to give this provision its plain, ordinary, and generally accepted meaning. *See Gulf Ins. Co.*, 22 S.W.3d at 424; *Heritage Res.*, 939 S.W.2d at 121; *Sun Oil Co.*, 626 S.W.2d at 728. The parties clearly intended to create a month-to-month tenancy at the expiration of the lease and to include all terms of the original lease not directly related to the duration of the original lease. We accordingly hold that the "as is" clause from the original lease was incorporated into the holdover lease and was applicable at the time of the fire. To do otherwise would be to give the phrase "under the terms and conditions of this lease" no meaning or effect. *See id*. Therefore, the district court appropriately relied on the leases's waiver terms when it granted summary judgment in favor of Snider. We overrule Gym-N-I's first issue.

7

***Whether the "as is" clause is enforceable***

In its second issue, Gym-N-I argues that the "as is" clause is unenforceable as against some or all of its claims. Moreover, Gym-N-I contends that summary judgment is insupportable in this case because the record contains unopposed evidence of negligence, breach of warranty, and fraud. We disagree.

### *"As is" clauses generally*

By agreeing to purchase commercial property "as is," a buyer agrees to make its own appraisal of the bargain and accepts the risks of the agreement. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). In *Prudential*, the supreme court approved the enforcement of "as is" clauses under certain circumstances. As long as the buyer is not induced by fraud into accepting the "as is" provision, the legal effect of the provision is to negate the causation element essential to recovery on claims associated with the physical condition of the property. *Prudential*, 896 S.W.2d at 161; *Lee v. Perez*, 120 S.W.3d 463, 467-68 (Tex. App.—Houston [14th Dist.] 2003, no pet.). As the court explained, contractual disavowal of reliance upon any representation is an important element of an arm's-length transaction and is binding unless set aside. *Prudential*, 896 S.W.2d at 161. Finally, an "as is" agreement negates the causation element essential to recovery on DTPA theories, fraud (excluding, of course, fraud in the inducement of the "as is" agreement), negligence, and breach of the duty of good faith and fair dealing. *Id*.

When considering the enforceability of an "as is" clause, we consider five factors: (1) the sophistication of the parties, (2) the terms of the "as is" agreement, (3) whether the "as is" agreement was freely negotiated, (4) whether the agreement was an arm's length transaction, and (5)

8

whether there was a knowing misrepresentation or concealment of a known fact. *Procter III v. RMC Capital Corp.*, 47 S.W.3d 828, 833 (Tex. App.—Beaumont 2001, no pet.) (distilling *Prudential* into five-factor test). Although not an independent factor, whether the buyer was represented by counsel is also important.[7] *See id*. at 833-34. Overall, we apply the factors to determine whether the "as is" clause in this case meets the "letter and spirit" of *Prudential* and should be held valid. *See id*. at 833.

### *Applicability of "as is" clause to a lease*

Gym-N-I does not allege that it was fraudulently induced to enter into the lease. In fact, Finn and Caddell both testified that they were *not* fraudulently induced. Instead, Gym-N-I first argues that *Prudential* applies only to the sale of property, not a lease, and should thus be distinguished on that basis. However, although most Texas case law concerns "as is" clauses in the context of commercial property sales, *see*, *e.g.*, *Prudential*, 896 S.W.2d at 156, "as is" clauses can also apply to leases of commercial property. *See Lee*, 120 S.W.3d at 467-68 (in which court considered applicability of "as is" provision in context of commercial lease and held that provision would waive physical defects of property but did not waive deed restriction); *see also Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 110-11 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("as is" provisions valid in lease of computer software). We see no meaningful distinction between sales contracts and leases for purposes of determining the enforceability of "as is" clauses.

---

[7] For example, whether there was legal representation is pertinent to an assessment of the "sophistication of the parties" and whether the agreement was "freely negotiated."

### *Application of* **Prudential** *to this lease*

Gym-N-I next argues that the "as is" clause cannot be enforced under the standards set forth in *Prudential* and its progeny. Applying the *Prudential* factors, as set forth above, it is undisputed that Finn and Caddell were familiar with the building space they were leasing and with the needs of their business. In addition, Finn had been present when the fire marshal discussed the installation of a sprinkler system with Snider. Moreover, before they signed the lease, both Finn and Caddell knew that Snider had received bids for sprinkler systems but had ultimately decided not to install one. Finn and Caddell were represented by counsel when they signed the lease. Their deposition statements indicate that each was aware that the "as is" provision was in the lease and each understood what it meant. Finally, as previously discussed, Finn and Caddell admit that Snider did not commit knowing misrepresentation, concealment, or fraud. Based on these uncontested facts, we hold that the *Prudential* factors are satisfied.

### *Effect of "as is" clause on claims associated with physical condition of property*

We now turn to Gym-N-I's contention that summary judgment was improper because evidence in the record supports claims of negligence, breach of warranty, and fraud under the DTPA. A valid "as is" clause, like the one here, negates the causation element essential to recovery on claims associated with the physical condition of the property. *See Prudential Ins. Co.*, 896 S.W.2d at 161; *Lee*, 120 S.W.3d at 467-68. "As is" clauses have been held applicable in the context of causes of action based on fraud, negligence, breach of duty, and the DTPA. *Prudential Ins. Co.*, 896 S.W.2d at 160-61 (where asbestos was discovered in commercial building, claims of fraud,

10

negligence, breach of duty of good faith and fair dealing, and violations of DTPA could not be sustained because building was purchased "as is"); *Larsen v. Carlene Langford & Assocs. Inc.*, 41 S.W.3d 245, 249-50, 253 (Tex. App.—Waco 2001, pet. denied) (in residential purchase, claims of common law and statutory fraud, negligent misrepresentation, and violations of DTPA were precluded because "as is" clause conclusively negated reliance element essential to recovery).

Gym-N-I's claims focus on Snider's failure to install a fire sprinkler system, a potentially defective fire alarm system, and the building's wiring. All of these alleged defects relate to the physical condition of the property before the lease was signed. Thus, as a matter of law, the "as is" provision negated causation in each of the claims asserted against Snider by Gym-N-I. *See Prudential Ins. Co.*, 896 S.W.2d at 161. Put another way, Gym-N-I's agreement to accept the premises "as is" effectively supercedes any fault of Snider's. *See id.* A defendant who negates at least one of the elements of a cause of action is entitled to summary judgment. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). We find, therefore, that there were no issues of genuine material fact regarding Gym-N-I's claims.

### *Implied warranty of suitability*

Next, Gym-N-I attempts to distinguish its claim for breach of the implied warranty of suitability on the basis that, as a matter of law, only an express agreement that the tenant will repair certain defects can waive that warranty. *See Davidow v. Inwood N. Prof'l Group-Phase I*, 747 S.W.2d 373, 377 (Tex. 1988). The supreme court first adopted the implied warranty of suitability in *Davidow*. 747 S.W.2d at 377. The implied warranty of suitability is an extension to commercial

11

leases of the implied warranty of habitability, which only applies to residential property. *See id*. (citing *Kamarath v. Bennett*, 568 S.W.2d 658 (Tex. 1978) (comparing residential lease objective of providing quarters suitable for living purposes with commercial lease objective of providing premises suitable for desired commercial use)). The supreme court held that, unless the warranty is waived, a landlord in a commercial lease impliedly warrants that facilities vital to the use of the premises for their intended commercial purpose are free from latent defects and will remain in suitable condition. *Id*. at 377.

Assuming that Gym-N-I's breach-of-warranty claim contains a causation element, under *Prudential*, the "as is" clause would foreclose that claim. In addition, under *Davidow*, the "as is" clause negates the implied warranty of suitability itself. *Davidow* predates *Prudential*, and we see nothing in either case that would limit the effect of the "as is" clause in the manner Gym-N-I suggests. While the supreme court in *Davidow* approved one means of waiving the implied warranty of suitability—if "the parties to a lease expressly agree that the tenant will repair certain defects, then the provisions of the lease will control"—it did not state that this is the *only* method by which the implied warranty of suitability can be waived. *See id*., 747 S.W.2d at 377. Rather, the supreme court explicitly stated that determination of whether there has been an actionable breach of the implied warranty of suitability depends on the particular circumstances of the case. *Id*. One of the factors to be considered in that analysis is "whether the tenant waived the defects." *Id*. Among other factors a court may consider are: (1) the nature of the defect; (2) its effect on the tenant's use of the premises; (3) the length of time the defect persisted; (4) the age of the structure; (5) the amount of

12

the rent; (6) the area in which the premises are located; and (7) whether the defect resulted from any unusual or abnormal use by the tenant. *Id.* In short, *Davidow* indicates that there is more than one way to override or waive the implied warranty of suitability.[8] *See id.*

We find this interpretation of *Davidow* to be consistent with other areas of our law of implied warranties. For example, the legislature has adopted the Uniform Commercial Code ("U.C.C."), including the U.C.C.'s implied warranties of "merchantability" and "fitness for a particular purpose" provisions. *See* Tex. Bus. & Com. Code Ann. §§ 2.314-.315 (West 1994). These implied warranties may be excluded or modified by conspicuous written language mentioning the implied warranty or even by an "as is" clause that makes plain that there is no implied warranty. *Id.* §§ 2.316(b), (c)(1) ("unless the circumstances indicate otherwise, all implied warranties are excluded in expressions like 'as is,' 'with all faults' or other language . . . [which] makes plain that there is no implied warranty"). The implied warranty of good workmanship may also be waived

_____

[8] We note that our holding today conflicts with holdings of our sister courts in Houston and Corpus Christi. *See Parts Indus. Corp. v. A.V.A. Servs., Inc.*, 104 S.W.3d 671 (Tex. App.—Corpus Christi 2003, no pet.); *Gober v. Wright*, 838 S.W.2d 794 (Tex. App.—Houston [1st Dist.] 1992, writ denied). In *Gober*, which involved the lease of a commercial building and damages caused by a leaking roof, the Houston court stated that the supreme court "intended to except from the lessor's responsibility only those repairs the lessee willingly accepted as part of the bargain." *Gober*, 838 S.W.2d at 798. The court further stated that, "As a matter of law, the landlord's implied warranty of suitability for commercial purposes is limited only by those specific terms in a commercial lease whereby a tenant expressly agrees to repair certain defects." *Id.* The Corpus Christi court cited *Gober* for this same exact language in holding that a tenant who had not expressly agreed to repair the roof of a commercial rental property had not waived the implied warranty of suitability. *Parts Indus.*, 104 S.W.3d at 680-81. We decline to interpret *Davidow* so narrowly. *Compare Davidow v. Inwood N. Prof'l Group-Phase I*, 747 S.W.2d 373, 377 (Tex. 1988), *with Gober*, 838 S.W.2d at 798, and *Parts Indus. Corp.*, 104 S.W.3d at 680-81.

contractually. *See Centex Homes v. Buecher*, 95 S.W.3d 266, 274-75 (Tex. 2002) (implied warranty of good workmanship can be disclaimed when agreement provides for manner of performance or quality of construction).

We are mindful that the implied warranty of habitability generally cannot be waived. *See id*. at 274 (implied warranty of habitability may only be waived by disclosure of defects). Although the implied warranty of suitability has its legal roots in the implied warranty of habitability, they are not identical legal concepts. In 2002, the supreme court outlined the policy concerns associated with the sale of a residential home that support the implied warranty of habitability. *See Centex*, 95 S.W.3d at 269-75. The court noted that "purchase of a [new] home is . . . in many instances the most important transaction of a lifetime." *Id*. at 269 (quoting *Humber v. Morton*, 426 S.W.2d 554, 555 (Tex. 1968)). The court also noted that the implied warranty of habitability protects "the average homebuyer who lacks the ability and expertise to discover defects in a new house." *Id*. at 274. Such considerations, although not wholly without application, are less persuasive in the context of commercial leases and the implied warranty of suitability. *See Davidow*, 747 S.W.2d at 376-77. In any event, as we have already noted, the supreme court has squarely ruled that the implied warranty of suitability may be contractually waived. *See id*. at 377. Thus, it is clear that the two warranties are not identical. *Compare Centex*, 95 S.W.3d at 275, *with Davidow*, 747 S.W.2d at 377.

In this case, we must decide whether this particular "as is" clause was sufficient to waive the implied warranty of suitability. The lease in this case explicitly mentions that Snider made

14

no warranties, including the implied warranty of suitability. The "as is" provision was even underlined and set in all-capitals for emphasis. *See Procter*, 47 S.W.3d at 834 (where court noted that release language was capitalized so that there could be no confusion as to far-reaching extent of release of liability). In addition, both Finn and Caddell testified in depositions that they realized the "as is" provision was in the lease, were told by counsel that it highly favored Snider, and understood the provision's intent and scope. Finally, as noted above, it is undisputed that Finn and Caddell knew of the building's condition, including the absence of a sprinkler system and the fact that the fire code issues had been a concern. Consequently, we find that the implied warranty of suitability was waived in this case by the "as is" clause and that the district court acted appropriately in granting summary judgment for Snider on Gym-N-I's breach of the implied warranty of suitability claim.

Having rejected all of Gym-N-I's arguments concerning the "as is" clause as a bar to its claims, we overrule Gym-N-I's second issue.

## CONCLUSION

Having found that waiver provisions of the original lease were incorporated into the holdover lease, that the "as is" waiver provision of the lease was valid, that the "as is" provision waived the implied warranty of suitability, and that there were no genuine issues of material fact preventing application of the "as is" clause, we have determined that the district court could have

15

appropriately relied on that clause to grant summary judgment in favor of Snider.  We affirm the judgment of the district court.


_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   February 3, 2005