**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00491-CV**
_____

**JESSIE CHARLES HORTON, Appellant**

**V.**

**WALDEN MARINA, Appellee**

_____

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-07-07359-CV**
_____

**MEMORANDUM OPINION**

Jessie Charles Horton (Horton or Appellant) appeals summary judgment granted in favor of Walden Marina (Appellee).[1] In three issues, Horton argues that the trial court erred in (1) striking Horton's affidavit because it was competent summary judgment evidence; (2) granting summary judgment on Horton's premises

_____

[1] The trial court granted two separate summary judgments in favor of Walden Marina that collectively disposed of all claims and issues.

1

liability claim because a genuine issue of material fact exists as to each challenged element; and (3) granting summary judgment for the defendant on Horton's breach of implied warranty of suitability claim because the claim was timely filed, the "as is" provision in the contract does not waive the warranty, and the evidence raises a genuine issue of material fact as to each challenged element. We affirm.

Background Facts

Horton filed suit against Walden Marina on July 12, 2013. According to Plaintiff's First Amended Petition, Horton rented a boat slip from Walden Marina. The petition alleged that, as Horton stepped off the dock at Walden Marina onto his boat on or about September 5, 2011, "a wooden board supporting his weight completely broke[]off, causing [Plaintiff] to fall, severely and permanently injuring himself as he grabbed a mooring with his right hand, tearing and shearing internal portions of his shoulder joint and related tissue."[2] Horton sued Walden Marina for

_____

[2] According to the appellate record, Walden Marina's premises include concrete walkways used by the public and tenants to access each boat slip. A tenant accesses his or her boat by stepping off each slip's separate wooden deck area and on which there is a locked storage box, and the tenant has exclusive control and access to the locked storage box. Other wood-decked areas for public use exist, such as "C dock deck[,]" but the other areas are different from the separate slip deck areas used for accessing tenants' boats. The appellate record includes two Slip Rental Agreements between Horton as tenant and Walden Marina as landlord for the rental of boat slip C-11: (1) an initial lease expiring after one year on June 30, 2011; and (2) a second lease agreement identical to the initial lease agreement, except that the

2

premises liability, negligence, and violations of the Texas Deceptive Trade Practices Act (DTPA), and also sought actual damages in the amount of $915,000, statutory damages under the DTPA, pre-judgment and post-judgment interest, attorney's fees, and court costs. The petition asserted that Walden Marina, as owner and operator, was responsible for maintaining the wooden dock area and owed a duty to protect and safeguard Horton, an invitee, from unreasonably dangerous conditions on the premises or to warn of their existence.

Walden Marina filed traditional and no-evidence motions for summary judgment as to the premises liability and negligence claims and as to Horton's requests for damages for past lost wages and future loss of earning capacity. Horton filed a response to the motions and attached exhibits as summary judgment evidence, including an affidavit of Horton. In his affidavit attached to his response to Walden Marina's motion for summary judgment, Horton attested to the following:

> My name is JESSIE CHARLES HORTON, I am over the age of EIGHTEEN (18) years, I have personal knowledge of the facts stated herein and I am the PLAINTIFF in this lawsuit.
>
> The wooden deck area which collapsed was always maintained by Walden Marina. Whenever I would call the Property Management, to report rotted wooden boards, Walden Marina would send out someone to replace the boards a short time after my call.

---

second lease agreement was a month-to-month lease from July 2011 to July 2012 with payments due monthly under the lease agreement.

3

Walden Marina filed a reply to Horton's response, along with a motion to strike Horton's affidavit.

On July 24, 2015, Horton filed a Fourth Amended Petition. The Fourth Amended Petition included the earlier pleaded premises liability and negligence claims, but did not include a claim for violations of the DTPA. Horton also included a claim for breach of the implied warranty of suitability arising out of the lease agreement for the boat slip. The petition sought actual damages in the amount of $3,400,000, damages for breach of warranty in the amount of $72,500, pre-judgment and post-judgment interest, attorney's fees, and court costs.

On August 14, 2015, the trial court granted Walden Marina's motion to strike Horton's affidavit. The same day, the trial court signed an order granting Walden Marina's "Traditional and No-Evidence Motions for Summary Judgment as to the premises liability and negligence claims and request for damages for past lost wages and future loss of earning capacity alleged in Plaintiff's First Amended Original Petition[,]" and dismissing those claims with prejudice.

Walden Marina subsequently filed its Traditional and No-Evidence Motions for Final Summary Judgment as to Horton's remaining claim for the breach of implied warranty of suitability. Walden Marina argued that the breach of implied warranty claim is barred by the applicable statute of limitations, Horton waived all

4

warranties by executing the "as is" boat slip lease, the implied warranty of suitability does not apply to a non-commercial lease or areas outside of the leased space, and Horton failed to offer legally sufficient evidence to raise a fact issue as to the elements of the claim. On November 10, 2015, the trial court signed an order granting the summary judgment, dismissing the breach of implied warranty of suitability claim with prejudice, and stating that "[t]his judgment finally disposes of all parties and all claims in this matter[.]"

Standard of Review

A trial court's rulings on objections to summary judgment evidence are reviewed under an abuse of discretion standard. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30-31 (Tex. 1997). To obtain a reversal, an appellant must not only show that the trial court's substantive ruling was erroneous, but that the ruling was harmful error, i.e., it was calculated to cause and probably did cause the rendition of an improper judgment. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *see also* Tex. R. App. P. 44.1(a)(1).

We review a trial court's summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The movant for traditional summary judgment must establish that (1) there is no genuine issue of material fact and (2) that the movant is entitled to judgment as a matter of law. Tex.

5

R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence that it is entitled to summary judgment, the burden shifts to the non-movant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* at 549.

In reviewing a no-evidence motion for summary judgment, we view the evidence in the light most favorable to the non-movant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). The non-movant, here the plaintiff, must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment. *See* Tex. R. Civ. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co.*, 135 S.W.3d at 600. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

In this case, the trial court granted Walden Marina's summary judgments without specifying the grounds. We will affirm the trial court's judgments if any of the grounds advanced by Walden Marina in its summary judgment motions are meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Summary Judgment on Premises Liability Claim

In his second issue, Horton contends that the trial court erred in granting summary judgment on Horton's premises liability claim because a genuine issue of material fact exists as to each challenged element. "In a premises liability case, the duty owed to the plaintiff depends on the status of the plaintiff at the time of the incident." *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004). A lessor generally has no duty to tenants or invitees for dangerous conditions on the leased premises. *Brownsville Navigation Dist. v. Izaguirre*, 829 S.W.2d 159, 160 (Tex. 1992) (citing Restatement (Second) of Torts § 356 (1965)). "This general rule stems from the notion that a lessor relinquishes possession or occupancy of the premises to the lessee." *Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996). The Texas Supreme Court has recognized several exceptions to this rule. *See id.* For example, a lessor who makes repairs may be liable for injuries resulting from the lessor's negligence in making the repairs. *Id.* (citing *Flynn v. Pan*

7

*Am. Hotel Co*., 183 S.W.2d 446, 448 (Tex. 1944)); *see also* Restatement (Second) of Torts § 357 (1965). A lessor who conceals defects on the leased premises of which the lessor is aware may also be liable. *Endsley*, 926 S.W.2d at 285 (citing *Morton v. Burton-Lingo Co.*, 150 S.W.2d 239, 241 (Tex. 1941)); *see also* Restatement (Second) of Torts § 358 (1965). Under some circumstances a lessee can be an invitee and a lessor may be liable for injuries caused by a defect on a portion of the premises that remains under the lessor's control. *See Shell Oil Co. v. Khan*, 138 S.W.3d 288, 296 (Tex. 2004) (quoting Restatement (Second) of Property § 17.3 cmt. a (1977)) (recognizing landlord liability to a tenant for a common area the landlord controls); *Endsley*, 926 S.W.2d at 285 (citing *Parker v. Highland Park, Inc*., 565 S.W.2d 512, 514-15 (Tex. 1978)); *see also* Restatement (Second) of Torts §§ 360, 361 (1965).

To succeed on a premises liability claim, an invitee must prove the following elements: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner or occupier's failure to use such care proximately caused the plaintiff's injury. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be

established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414-15 (Tex. 2008). For actual knowledge, courts generally consider whether the premises owner had received reports of prior injuries or reports of the potential danger presented by the condition. *Univ. of Tex-Pan Am. v. Aguilar*, 251 S.W.3d 511, 514 (Tex. 2008). Constructive knowledge, however, can be established by facts or inferences that a dangerous condition could develop over time. *Stewart*, 249 S.W.3d at 415.

Walden Marina argued in its summary judgment motions and on appeal that, as to Horton's premises liability and negligence claims, Horton produced no evidence that Walden Marina, as lessor of the boat slip, controlled any portion of slip C-11 including the deck Horton rented and where his injuries allegedly occurred. Walden Marina also argued that the negligent repair and concealed defect exceptions do not apply because there is no evidence that Walden Marina ever undertook a repair of the C-11 decking prior to Horton's alleged injury, and there is no evidence that any of Walden Marina's personnel knew there was a defect on the decking where Horton fell. According to Walden Marina, Horton presented no evidence that Walden Marina had actual or constructive knowledge of a defective condition on the decking where Horton fell.

9

In his response to Walden Marina's motions for summary judgment, Horton argued that a genuine issue of material fact exists as to the element of control because the decking where he was injured was a common area, the lease agreement did not cover the decking area where he was injured, Walden Marina replaced wooden decking after another person fell less than a year before Horton's fall, Walden Marina replaced the boards where Horton fell after his fall, and Walden Marina had employees whose duties included keeping the marina premises clean and safe. On appeal, Horton argues he was a tenant of the boat slip but an invitee "on the dock itself and the summary judgment evidence raises, at a minimum, a genuine issue of material fact on Walden Marina's control of the dock where Horton was injured." Horton maintains on appeal that the lease agreement was only for the "boat stall" and not for any portion of the deck area, the decking where he was injured was not covered by the lease agreement, and the terms of the lease agreement explicitly provided that Horton did not have control of the dock area.

Walden Marina attached summary judgment evidence to its motion for summary judgment, including excerpts from Horton's November 8, 2012 deposition:

Q. . . . When you first rented your slip in July of 2011, was there already a deck?

A. Yes, ma'am.

10

Q. Decking in the slip? Do you have any knowledge on who installed the deck?

A. No idea.

Walden Marina also attached Horton's October 22, 2013 deposition testimony, when he testified to the following:

Q. You testified in your previous deposition that the deck – the wooden deck, that that was already installed when you purchased your boat and began renting the boat slip. Is that correct?

A. That is correct.

Q. And that was back in 2010? That was your testimony, it was about July, in the summer of 2010.

A. Yes, ma'am, around that time.

Q. And that the -- that you were aware at that time that you were renting the boat slip on an as is basis. Is that correct?

A. I was renting it as a boat slip. I never knew it was as is.

Q. That was your testimony, that you knew it was as is.

A. Okay. Well, I -- yes, ma'am.

Q. So are you stating now that you did not know it was as is?

A. I knew it was as is. I just know that they provide maintenance on the structures.

Q. How did you know they provide maintenance on the structures?

A. I witnessed them doing it.

11

Q. What did you witness?

A. Building the decking and removing decking. Not my particular decking.

Q. What decking?

A. It was next to my boat slip that they removed.

Q. The large patio --

A. Yes.

Q. -- area?

A. Uh-huh.

. . . .

Q. That large patio area, is that an area that all of the tenants of the marina can use?

A. Yes, ma'am. It was public.

Q. Any other maintenance on the structures?

A. I have seen them replace some of the cement tiles and electrical lines.

Q. And the cement tiles, are you referring to the cement tiles in the dock?

A. Yes, on the floating portion of the dock. And they also built a new walkway out there when they moved it when the water went down. They built a new decking walkway.

Q. Is that walkway for use by everybody?

12

A.    Yes, ma'am.

Q.    And the dock, that concrete dock, that is the dock that everybody uses to walk to their individual boat slips, correct?

A.    Yes, ma'am.

Q.    And as part of the as is provision, the marina did not make any representations or guarantees to the rental space. Is that correct?

A.    Yes, ma'am.

Q.    And the wooden decking that is at issue -- so whenever I refer to the wooden decking in your dock, if you'll agree with me that I'm referring to the wooden decking that is at issue in this case where the board broke. Can you agree with me on that?

A.    Yes.

Q.    And the wooden decking, that's part of the boat slip that you rent, correct?

A.    Yes, ma'am.

. . . .

Q.    The top photograph on that page, what is that a photograph of?

A.    That is the edge of the dock and the addition, the wooden addition.

Q.    The decking?

A.    Uh-huh.

Q.    Is -- can you see your boat in that photograph?

A.    Yes, ma'am.

13

Q. Is there anything else in the photograph?

A. Dock box.

. . . .

Q. And that's your dock box, correct?

A. It came with the slip.

Q. So is it yours?

A. No, ma'am.

Q. It is not?

A. I don't know whose it is. It came with the dock. I use it.

Q. What do you use it for?

A. To keep life vests in.

Q. Do you keep it locked?

A. Yes, ma'am.

Q. Who has access to the box, the dock box?

A. Myself and my children and my ex-wife.

Q. So you and your family?

A. That's correct.

. . . .

Q. But it's your testimony that you don't know who it belongs to?

14

A.     It was on the deck whenever I got there. I assumed it came with it.

Q.     When you say "assumed it came with it," you mean you assumed it was part of what you were renting --

A.     That's correct.

Q.     -- part of rental of the boat slip? Do you use the decking area to enter and exit your boat?

A.     Yes, ma'am, I do.

Q.     Do you ever enter or exit your boat from the fingers, the side --

A.     No, ma'am.

Q.     -- piers? Does anybody else use your deck?

A.     Not to my knowledge.

Horton stated in his deposition that he controlled the decking where he allegedly fell. We find nothing in the Slip Rental Agreement that would contradict such testimony or create a genuine issue of material fact on the element of control.

As to the element of actual or constructive knowledge of an unreasonably dangerous condition, Horton argued at trial and on appeal that he produced testimonial evidence that: (1) after Walden Marina's Property Manager examined the deck area after Horton fell, she considered the area an unsafe condition, (2) Walden Marina had a previous incident of injury on decking less than a year before Horton's injury, (3) Walden Marina had employees whose duties included keeping

15

the premises clean and safe, and (4) the latent defect could have been discovered by reasonable diligence by Walden Marina.

Horton alleged that the prior slip and fall incident at the marina established prior knowledge of the defective deck. To establish his argument, Horton relied upon the following testimony by Walden Marina's Property Manager:

Q.    When was the last injury you had before [Horton]'s?

A.    The last injury before [Horton]'s would have been in January of 2011.

Q.    What are the facts?

A.    . . . Jan Clark was cutting through the C dock deck and she tripped and fell on the deck.

. . . .

Q.    Where is her vessel located?

A.    On C dock.

Q.    Same one as [Horton]'s?

A.    Yes.

Q.    How far from [Horton]'s slip?

A.    At the time hers was, basically, right around the corner, a few slips down.

According to Walden Marina's Property Manager, "[Jan Clark] wasn't quite sure[]" what caused her to trip. The testimony relied on by Horton reflected that a prior fall

16

occurred in a different area (C dock deck, which was used by the public and not part of any particular slip) of the marina, but it fails to raise a genuine issue of fact that an unreasonably dangerous condition caused Jan Clark's trip and fall, or that Walden Marina knew that the same unreasonably dangerous condition existed in the area of the C-11 decking when Horton fell.

In response to Walden Marina's summary judgment motion, Horton also presented the following testimony by Walden Marina's Property Manager as evidence that Walden Marina had knowledge of the alleged unreasonably dangerous condition of the C-11 decking:

Q.    To your knowledge, [the area where Horton fell] was built right. Is that what you said?

A.    To my knowledge, yes.

Q.    Knowing the facts that you know today, it was built right. Correct?

A.    The facts that I know today, it was not built right.

. . . .

Q.    . . . . It was an unsafe condition. Correct?

A.    After his fall, we did find an unsafe condition, yes.

We conclude that this testimony does not raise a genuine issue of fact as to Walden Marina's actual or constructive knowledge of any alleged defective condition of the

17

C-11 decking prior to the accident. *See Del Lago Partners v. Smith*, 307 S.W.3d 762, 771 n.32 (Tex. 2010) (discussing duty to warn or make premises safe). Horton presented no evidence that Walden Marina had prior knowledge of any unsafe condition on the C-11 decking where Horton fell. The Walden Marina Property Manager also testified that the marina did not build the C-11 decking that Horton rented, and that "[t]o our knowledge, the area was safe."

Even if the trial court erred in striking Horton's affidavit, and even if Horton had created a fact issue on whether Walden Marina controlled the decking where Horton fell, we conclude that Horton failed to raise a genuine issue of material fact regarding whether Walden Marina had actual or constructive knowledge of the alleged premises defect on the C-11 decking where he fell. The trial court did not err in granting Walden Marina's summary judgment as to Horton's premises liability, negligence, and damages claims. Issue two is overruled. We need not address issue one. *See* Tex. R. App. P. 47.1.

Summary Judgment on Implied Warranty of Suitability Claim

In his third issue, Horton argues the trial court erred in granting summary judgment on Horton's breach of implied warranty of suitability claim because the claim was timely filed, the "as is" provision in the contract does not waive the warranty, and the evidence raises a genuine issue of material fact as to each

18

challenged element. As part of Walden Marina's Traditional and No-Evidence Motions for Final Summary Judgment on the implied warranty of suitability claim, Walden Marina asserted among other defenses that Horton's claim fails as a matter of law. Walden Marina contends that the implied warranty of suitability does not apply to the boat slip rental because the Slip Rental Agreement was not a commercial lease. Horton argued in his response to the motions for summary judgment that the implied warranty of suitability applies to the Slip Rental Agreement in this case because "[t]here is no requirement that the tenant must actually be conducting commerce for the implied warranty of suitability to be applicable—merely that the Agreement cover commercial rather than residential property."

The Texas Supreme Court first recognized the implied warranty of suitability for intended commercial purposes in *Davidow v. Inwood North Professional Group-Phase I*, 747 S.W.2d 373, 377 (Tex. 1988). The implied warranty of suitability means "that at the inception of the lease there are no latent defects in the facilities that are vital to the use of the premises for their intended commercial purpose and that these essential facilities will remain in a suitable condition." *Id.* A landlord may be liable for breach of the implied warranty of suitability for intended commercial purposes if the evidence shows that: (1) the landlord leased property to the tenant, (2) the lease covered commercial property, (3) the leased property had a latent

19

physical or structural defect at the inception of the lease, (4) the defect was in an area that was vital to the property for its intended commercial purpose, (5) the defect made the property unsuitable for its intended commercial purpose, and (6) the tenant suffered injury as a result thereof. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 502 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Davidow*, 747 S.W.2d at 374-75, 377; *Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 871 (Tex. App.—Dallas 1989, writ denied)); *see McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex. App.—Dallas 2006, no pet.).

The Slip Rental Agreement executed by Horton expressly provides the following:

> **Commercial Action:** Customer understands that the operation of the premises is a commercial endeavor of Marinas and therefore, Customer[] hereby agrees to refrain from any commercial action competitive with the interest of Marina on the Marina premises. Customer will not operate boat rentals or charter parties or any other commercial endeavor from the Marina.

Even assuming without deciding that the breach of implied warranty of suitability applied to a non-commercial, personal injury premises liability claim, the "as is" clause in the Slip Rental Agreement would bar this claim. *See Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 914 (Tex. 2007) ("as is" clause in the commercial lease at issue defeated the causation element of an implied warranty of suitability cause of action). We conclude that the trial court did not err in granting Walden

20

Marina's traditional summary judgment on Horton's breach of implied warranty of suitability claim. We need not address whether the breach of implied warranty claim was barred by the applicable statute of limitations. *See* Tex. R. App. P. 47.1. Issue three is overruled. We affirm the trial court's judgments.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on September 22, 2016
Opinion Delivered September 28, 2017

Before Kreger, Horton, and Johnson, JJ.